Luther HUMPHREY, Plaintiff-
Appellee,

v.

SOUTHWESTERN PORTLAND CE-
MENT COMPANY, Defendant-
Appellant.

No. 73–2278.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1974.

Rehearing and Rehearing En Banc
Denied Feb. 22, 1974.

W. A. Thurmond, El Paso, Tex., for defendant-appellant.

James P. Scanlan, Appellate Division, E. E. O. C., Washington, D. C., amicus curiae.

Bob Hoblit, Odessa, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

BELL, Circuit Judge:

Plaintiff filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., seeking injunctive relief and assorted damages on the claim of discriminatory conduct in the award of a job by defendant. The district court found discrimination and awarded damages. 42 U.S.C.A. § 2000e-5(g). There was no award of the position in question, plaintiff having become disabled in the meantime. This appeal followed. We reverse.

The operative facts ended in 1968 with the award of the job. They were that plaintiff, a black employee, bid on the position of special utilityman (mechanical) in defendant's Odessa, Texas cement plant. He had seniority dating back to 1964. A white employee also bid on the position. He had seniority of only five months. There were no other bidders. It was undisputed that seniority governed in the award of positions only when qualifications were approximately equal, otherwise the position was to go to the most qualified bidder.

The procedure used for bidding on vacant positions in defendant's plant was to post the job vacancy with the request that bid forms be completed by those interested in bidding. This procedure will be seen in the following exhibit which was actually posted in this case:

To: ALL EMPLOYEES

From: G. F. SEIBERT
    Subject: Position Opening
    Date: May 14, 1968
SPECIAL UTILITY MAN (MECH)

QUALIFICATIONS
High School education or equivalent. Capable of performing inspections, lubrication, and minor repairs of equipment related to cement plant operation. Able to read and interpret simple mechanical drawings, blue-prints, sketches, and manufacturers' specifications.
Able to use measuring devices such as feeler gauges, micrometer, and calipers.

DUTIES
Responsible to Maintenance Foreman. Lubricate and make general inspections, simple installations, minor repairs (*including dust collector repairs*), and adjustments to mechanical equipment. Assist maintenance men on major work. Perform such general housekeeping necessary to keep tools, equipment and working areas safe, clean and orderly. May at times work with a helper. Perform any other duties as assigned by the Maintenance Foreman.

HOURS
Normally day work; 5 days per week; 8 hours per day.

RATE

$3.29/hour after completion of a satisfactory probation period.

IF NO QUALIFIED BIDS ARE RECEIVED, A BREAK-IN POSITION WILL BE AWARDED, REQUIRNG THE ABOVE QUALIFICATIONS TO BE MET WITHIN A REASONABLE PERIOD OF TIME. BIDS WILL BE ACCEPTED UNTIL 4:00 PM, FRIDAY, MAY 17, 1968.

NOTE:For the present, this man will be used for baghouse work.

/s/ G. F. SEIBERT
/s/ BY DKH

The required procedure was that the bid forms be completed and deposited in a mailbox in the First Aid room of the plant. Plaintiff's bid was as follows:

Odessa Plant

Date: 5/17/68

Bid for job of—special utility man (Mech.)

Employment Date—June 1, 1964 AGE —36

Job Preference * _____

Education (location, number years, graduation date; field of greatest interest; special courses)

High School—Completed 11th grade

College—

Technical—

Correspondence—

Other

Specific Experience and Qualifications (as applied to this particular job)— Have worked and assisted at this job from time to time since being employed here.

General Plant Experience—capable of operating all yard equipment at this Plant.

Remarks:—Am familiar with Dust Collection systems.

/s/ LUTHER HUMPHREY

The bid of employee Dennis was as follows:

Odessa Plant
Date 5/16/68

Bid for job of—Special Utility man (Mech)

Employment Date—1/5/68

AGE—27

Job Preference *_____

Education (location, number years, graduation date; field of greatest interest; special courses)

High School—G.E.D.

College—

Technical—Electronics, Welding.

Correspondence—Electronics

Other—

Specific Experience and Qualifications (as applied to this particular job)—

Automobile mechanics, Discel Mechanics, Hydraulic repair (Backholes) Welding, and Equipment operation.

General Plant Experience—Baghouse work, Knile. Bricking, belt roller replacement, Packhouse loading, Equipment operations, and general clean up.

Remarks:—Have read Blue-prints, Mechanical Drawings. Have used feeler gauges micrometers and calipers. Have done some mechanical drawing in the past.

/s/ HOWARD H. DENNIS JR.

After receiving the two bids, the plant manager, personnel officer, and foreman met, considered the bids, and awarded the job to Dennis on the grounds that he was better qualified even though plaintiff was the senior employee.

Thereafter plaintiff complained to one of defendant's officers from California of the failure to keep a company promise that a written test would be given to bidders before awarding jobs. Within a few days thereafter plaintiff and Dennis were given written tests. Plaintiff scored 12 on the test while Dennis scored 50. The validity of the test is not in issue. The score made by Dennis was not acceptable in that 70 was con-

sidered a passing grade but he was allowed to stay on the job pending the taking of another test.

Plaintiff testified that he became upset over Dennis's having been allowed to stay on the job and because he was given extra time for taking the second test. One difficulty with plaintiff's position, however, is that the job was awarded to Dennis, as between plaintiff and Dennis, before or not later than the first test.

All of the evidence adduced upon the trial was to the effect that Dennis was the better qualified of the two employees. In addition, plaintiff's counsel stipulated that Dennis was qualified for the position.

There were only two circumstances which militated against defendant at all during the trial from the standpoint of plaintiff carrying the burden of establishing racial discrimination in the award of the job. The first was the disclosure that the bid form submitted by Dennis was completed in two colors of ink. Some of the insertions by Dennis were in blue ink while others were in black ink. Dennis testified that he ran out of ink while completing the form but that he deposited the bid in the mailbox in precisely the same condition as it appeared on the trial. The other circumstance was in the fact of the tests having been given.

The district court drew the following inferences from these circumstances:

Finding of Fact No. 13

Fearing that a charge of discrimination might be made, a test was ordered given. In addition, the bid of the employee who was awarded the promotion was altered to reflect the fact that he had received additional training.

These findings are the sole support for the conclusion as to racial discrimination reached in Finding of Fact No. 11:

On May 20, 1968, the officials who reviewed the credentials of these two men chose the latter to receive the promotion. In part, their decision was based upon his apparent capacity to perform the job. But their decision to award him the promotion, rather than the plaintiff, was also based on the plaintiff's race; i. e. the fact that he is a Negro.

■■ It is to be noted that these findings are in terms of ultimate facts and must depend for efficacy on underlying or subsidiary findings. There must be some support in the record for the ultimate facts found and, absent support, they are due to be set aside as clearly erroneous. Rule 52(a), F.R.Civ. P. There are no subsidiary findings whatever to undergird these ultimate facts and we thus turn to the record in an effort to find support for them.

■ With respect to the finding that the bid was altered, we gather that the district court hinged its finding against defendant on the inference, based on the difference in the colors of ink, that additional qualifications were included after the award of the bid to bolster the bid.[1] As noted, this inference was in sharp conflict with the testimony of Dennis.

The clear, positive and undisputed testimony of record from Dennis was that all handwriting on the bid was his; that the bid form was filled out in its entirety by him on May 16, 1968; that it was filled out at his home; that it was filled out and completed with both colored inks on it at the time he dropped it into the bid box; and the bid form was not changed after he dropped it into the box. He further explained the reason

1. After the entry of judgment, defendant filed a motion for new trial, attaching thereto the affidavit of Dennis reiterating his testimony, and the affidavit of the company personnel director stating that he personally removed the Dennis bid form from the bid box and that it was then in the same form as it existed at the trial. The motion for new trial was overruled.

for the bid form containing two different colored inks. He stated:

"At the time I was filling it out, you can't pick up a pen and say it is going to have enough ink to write the whole thing. . I run out of ink, I filled it in, the top part, signed it and then went ahead and started filling in the rest and run out of ink."

This testimony which reasonably explains the existence of both blue and back ink stands unimpeached and uncontradicted. There is no evidence to the contrary and the record as a whole is consistent with this testimony.

We have attempted to reconstruct the possible reasoning of the district court. It was apparently a two step procedure: first, the court concluded Dennis was not a credible witness; second, from the fact of two colors of ink, the court inferred that the form was altered after the job was awarded. This goes too far.

The inference drawn could not stand in the face of the testimony of Dennis and its consistency with the facts actually proven; indeed with the whole record. In Pennsylvania Railway Co. v. Chamberlain, 1933, 288 U.S. 333, 341, 53 S.Ct. 391, 394, 77 L.Ed. 819, 823, the court said:

"And the desired inference is precluded for the further reason that respondent's right of recovery depends upon the existence of a particular fact which must be inferred from proven facts, and this is not permissible in the face of the positive and otherwise uncontradicted testimony of unimpeached witnesses consistent with the facts actually proved, from which testimony it affirmatively appears that the fact sought to be inferred did not exist. . . ."

See also Foran v. Commission of Internal Revenue, 5 Cir., 1948, 165 F.2d 705, 707 (J. Sibley applying this same rule in reversing the tax court). The undisputed facts were inconsistent with the inference drawn. Thus the finding of an alteration fails as a matter of law.

The other essential fact found was that defendant feared that a charge of discrimination might be made and, because of this fear, a test was given. There is no evidence whatever to support this statement. The only evidence bearing on it is that plaintiff requested the test. Thus this finding is clearly erroneous.

The long and the short of the matter here is that plaintiff failed to prove racial discrimination in the award of the position in question. There was simply no evidentiary basis on which the district court could decide the case in favor of plaintiff.

The result is that the judgment of the district court must be and it is reversed with direction that judgment be entered in favor of the defendant. It is unnecessary to consider the other assignments of error.

Reversed with direction.