Peggy WILLIAMS, Appellant,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

No. 82–486.

District of Columbia Court of Appeals.

Argued June 29, 1983.

Decided Aug. 31, 1983.

As Amended Nov. 22, 1983.

John A. Turner, Jr., with whom Marie A. Fitzgerald, Washington, D.C., was on brief, for appellant.

Gary S. Freeman, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees. Diana M. Savit, Asst. Corp. Counsel, Washington, D.C., also entered an appearance for appellees.

Before NEWMAN, Chief Judge, and PRYOR and TERRY, Associate Judges.

TERRY, Associate Judge:

On March 17, 1973, appellant went to work for the Washington Technical Institute (now a part of the University of the District of Columbia) as a program assistant. Approximately two years later she filed a complaint with the District of Columbia Office of Human Rights (OHR) claiming employment discrimination on the basis of sex and age. Specifically, appellant alleged that she was being paid a lower salary than her male counterparts although she performed the same work. On April 25, 1977, OHR entered a finding of probable cause in support of appellant's discrimination claim.[1] The parties, however, were

---

1. On June 10, 1977, appellant amended her complaint to include allegations of intimidation and harassment on the part of her employer

unable to reach a conciliation agreement, and appellant abandoned her administrative claim by filing a request for withdrawal of her complaint, which was granted by OHR in January of 1979.

Appellant then filed suit in the Superior Court alleging employment discrimination based on sex, family responsibilities, marital status, and matriculation. *See* D.C.Code § 1–2512 (1981). She also alleged retaliatory conduct on the part of her employer following the filing of her administrative complaint with OHR. She sought relief in the form of compensatory damages for loss of wages, punitive damages, and a declaratory judgment that the "acts and practices" of the university were in violation of the laws of the District of Columbia. The trial court, on appellees' motion, dismissed her complaint with prejudice.[2]

Appellant contends on appeal that because her employer refused to conciliate, she was free to relinquish her administrative claim and pursue her remedies in the Superior Court. This argument is unacceptable.

■ "As a general rule, in order to seek judicial review of an administrative personnel decision, a party first must exhaust administrative remedies," *Pender v. District of Columbia*, 430 A.2d 513, 515 (D.C.1981), unless it would be futile to do so. *Apartment & Office Building Ass'n v. Washington*, 343 A.2d 323 (D.C.1975). Because appellant has failed to exhaust her administrative remedies, and because it does not appear that exhaustion would be futile, she is barred from presenting her claim to the courts.[3]

■ At the time appellant started to work as a District of Columbia employee, she was protected against discrimination in employment by Commissioner's Order 71–26 (February 2, 1971). That order provided for administrative remedies but said nothing about judicial review. Eight months after her employment began, the Human Rights Law of 1973 was adopted by the City Council. 20 D.C.Reg. 345 (1973), enacting 34 DCRR §§ 1.1–35.3. Although the 1973 law contained a provision authorizing direct resort to the courts, 34 DCRR § 35.2, identical in all material respects to the present D.C.Code § 1–2556 (1981),[4] it also included language which provided a "final" administrative remedy for District of Columbia government employees, 34 DCRR § 29.3. Virtually identical language now appears in D.C.Code § 1–2543 (1981), which states:

*Notwithstanding any other provision of this chapter,* the Mayor shall establish rules of procedure for the investigation, conciliation and hearing of complaints filed against District government agencies, officials and employees alleging vio-

occurring after the filing of her original complaint.

2. Although appellees filed an affidavit in support of their motion, submission of the affidavit did not convert the motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment. *See Bernay v. Sales,* 435 A.2d 398 (D.C.1981); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969).

3. The duty to exhaust administrative remedies lies with the aggrieved party, not the agency. *Malcolm Price, Inc. v. District Unemployment Compensation Board,* 350 A.2d 730 (D.C.1976).

4. Section 1–2556 provides:
 (a) Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of compe-

tent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder: Provided, that where the Office [of Human Rights] has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this chapter may file the same complaint with the Office.
 (b) The court may grant such relief as it deems appropriate, including but not limited to, such relief as is provided in § 1–2553(a). This section (formerly D.C.Code § 6–2296 (1978 Supp.)) was enacted as part of the Human Rights Act of 1977, D.C.Law 2–38, 24 D.C.Reg. 6038, which superseded the 1973 law.

lations of this chapter. The final determination in such matters shall be made by the Mayor or his designee. [Emphasis added.]

One of the "other provision[s] of this chapter" which this section expressly makes inapplicable is section 1–2556 (or, in appropriate cases, its predecessor, 34 DCRR § 35.2), which authorizes the filing of a civil action by "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice . . . ." We therefore conclude that, given the availability of administrative remedies at all times pertinent to this case, appellant was required to exhaust them before seeking relief in the courts.[5] We hold that the administrative remedies provided by D.C. Code § 1–2543 (1981) and its predecessors, 34 DCRR § 29.3 and Commissioner's Order 71–26, are the exclusive remedies available to a District of Columbia government employee claiming discrimination in employment, and that the private right of action established by D.C.Code § 1–2556 (1981) and its predecessor, 34 DCRR § 35.2, is available only to non-government employees. *Cf. Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (similar holding with respect to federal government employees).

The 1973 Human Rights Law established a conciliation mechanism for settling disputes based on claims of employment discrimination. It also provided that "[i]n case of failure of conciliation efforts . . . and after a finding of probable cause, the Office [of Human Rights] shall cause to be issued and served in the name of the Commission, a written notice, together with a copy of the complaint . . . requiring the respondent to answer the charges of such complaint at a public hearing . . . ." 34 DCRR § 33.1.[6] Such a hearing was never held in this case because appellant prematurely withdrew her complaint.

■ Appellant admits that once conciliation efforts broke down, she forsook the administrative remedies available to her and sought judicial relief. By ignoring the established hearing procedures, appellant foreclosed the possibility that her claim might be resolved without recourse to the courts. This result is precisely what the exhaustion doctrine is intended to avoid.[7] As a District of Columbia government employee, appellant was required to exhaust her administrative remedies. The trial court correctly dismissed her complaint because she failed to do so.

*Affirmed.*

---

5. Had appellant exhausted her administrative remedies, there is some question whether judicial review of a final agency action could have been sought in this court or in the United States District Court. *Compare* D.C.Code § 1–2554 (1981) *with* 42 U.S.C. § 2000e–16(c) and *O'Neill v. District of Columbia Office of Human Rights,* 355 A.2d 805, 807–808 (D.C. 1976). That issue is not before us in this case, however, and thus we leave its resolution to another day.

6. The same provision appears in the Human Rights Act of 1977 and may now be found in D.C.Code § 1–2550 (1981).

7. Some of the reasons for requiring exhaustion of administrative remedies were noted by the Supreme Court in *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969):

> Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*See also Rhodes v. Quaorm,* 465 A.2d 370, 372 (D.C.1983).