Frederick G. NEWMAN, Appellant,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

Nos. 84-1246, 85-1568.

District of Columbia Court of Appeals.

Argued March 25, 1986.
Decided Nov. 20, 1986.

James Edward Mercer, Washington, D.C., for appellant.

Michele Giuliani, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before MACK, NEWMAN and ROGERS, Associate Judges.

MACK, Associate Judge:

█ Appellant Frederick Newman is a police officer whose civil action against the District of Columbia, the Metropolitan Police Department and Police Chief Maurice Turner (referred to collectively as "the District") was dismissed prior to trial. In his complaint, appellant alleged that the District had violated the Human Rights Act by discriminating on the basis of sexual orientation. The complaint also included common law claims for intentional infliction of emotional distress and breach of contract. We agree with the District that, as a public employee, appellant was required to exhaust the administrative remedies available to him under the Human Rights Act. No such requirement, however, applies to his accompanying common law claims. We reject the District's suggestion that the common law claims asserted by appellant are barred by the exclusivity provision of the disability compensation scheme set forth in its Comprehensive Merit Personnel Act. Accordingly, while we affirm the dismissal of appellant's statutory claim of sexual orientation discrimination, we reverse and remand the dismissal of his common law tort and contract claims.[1]

I

Since 1970 appellant has been employed as a police officer by the District of Columbia Metropolitan Police Department ("MPD"). In August of 1983 he filed a complaint with the Equal Employment Opportunity Division ("EEOD") of the MPD alleging unlawful discrimination in employment on the basis of sexual orientation. In the District of Columbia, such discrimination is prohibited by the Human Rights Act. See D.C.Code §§ 1–2501 to –2557 (1981 & 1986 Supp.).

The EEOD dismissed appellant's complaint for lack of probable cause. Appellant then filed his complaint with the District of Columbia Office of Human Rights ("OHR"), again alleging employment discrimination on the basis of sexual orientation. Specifically, he claimed that he was transferred out of the recruitment division of the MPD because of his homosexual orientation. On April 19, 1984, without allowing the OHR to proceed with the case on its merits, appellant voluntarily withdrew his complaint.

On the same day, appellant filed the first of two complaints in Superior Court. *Newman v. District of Columbia*, Civ. Action No. 4854–84 (D.C.Super.Ct. filed April 19, 1984). In count one of his amended complaint, appellant alleged a breach of contract based on his transfer from the Recruitment Division of the MPD; in count two he alleged intentional infliction of emotional distress; and in count three appellant alleged employment discrimination based on sexual orientation in violation of the Human Rights Act, *see* D.C.Code §§ 1–2512, –2526 (1981). On August 8, 1984, Judge Hannon granted the District's motion to dismiss the complaint for appellant's failure to exhaust his administrative remedies. A timely notice of appeal was filed on September 5, 1984 (Appeal No. 84–1246).

While appeal from the dismissal of his first complaint was pending in this court,

---

1. The District challenges our jurisdiction to hear appeal No. 84–1246. It argues that the notice of appeal was not timely filed, counting the relevant time frame from the date of a dismissal order later vacated by the trial court because it resulted from a clerical error. The District is in error. The trial court dismissed the case a second time on August 8, 1984, and it was this second dismissal which started time running for purposes of filing the present appeal. The appeal was duly filed on September 5, 1984, within the thirty day period following the relevant order of dismissal. D.C.App.R. 4(a)(1).

appellant filed another action in Superior Court. *Newman v. District of Columbia,* Civ. Action No. 13009–84 (D.C.Super.Ct. filed Oct. 30, 1984). This complaint was substantially identical to the earlier one, except that it no longer contained his statutory claim of unlawful sexual orientation discrimination. The common law tort and contract claims were unchanged. On May 6, 1985, Judge Holmes granted the District's motion for summary judgment. From the dismissal of this second complaint, a second appeal was taken to this court while the first was still pending (Appeal No. 85–1568).

In this second appeal, the District moved for summary affirmance. The District briefed an additional argument, which in the first proceeding it had raised only orally. As well as arguing that appellant should have exhausted his administrative remedies, the District contended that his common law claims were precluded by the exclusivity provision of the compensation guaranteed to public employees under the Comprehensive Merit Personnel Act. *See* D.C.Code §§ 1–601.1 to 1–637.2 (1981 & 1986 Supp.). We denied the District's motion for summary affirmance and consolidated both appeals in our order of March 21, 1986.

For the purposes of this opinion, we need not and do not distinguish between the two proceedings. Reduced to manageable terms, appellant challenges the trial court's dismissal of a complaint which is grounded upon three causes of action: a statutory claim under the Human Rights Act and two common law claims, one in tort for intentional infliction of emotional distress, and the other for breach of contract. We address first the dismissal of appellant's statutory claim under the Human Rights Act.

## II

The Human Rights Act makes it unlawful to deprive any individual of equal employment opportunities because of his or her sexual orientation. D.C.Code § 1–2512 (1981).[2] The trial court dismissed appellant's Human Rights Act claim on the ground that he had failed to exhaust his administrative remedies. According to appellant, the trial court erred because, pursuant to § 1–2556(a), he was entitled to voluntarily withdraw his complaint from the OHR at any time prior to a decision on the merits.[3]

This argument has already been made by a public employee, and by one who was in precisely the position that appellant is now. In *Williams v. District of Columbia,* 467

---

**2.** That section of the Human Rights Act provides, in relevant part:

(a) General.—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, *sexual orientation,* family responsibilities, physical handicap, matriculation, or political affiliation, of any individual:

(1) To fail or refuse to hire, or to discharge, any individual; or otherwise *to discriminate against any individual, with respect to his [or her] compensation, terms, conditions, or privileges of employment,* including promotion; or to limit, segregate, or classify his [or her] employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his [or her] status as an employee. [Emphasis added.]

Another provision makes it an unlawful discriminatory practice to aid, abet, invite, compel or coerce the doing of a prohibited act. D.C. Code § 1–2526 (1981).

**3.** That section of the Human Rights Act provides:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder: Provided, that where the [OHR] has dismissed such complaint on the grounds of administrative convenience, or *where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed.* No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this chapter may file the same complaint with the [OHR]. [Emphasis added.]

A.2d 140 (D.C.1983), a District of Columbia government employee filed a complaint with the OHR alleging employment discrimination on the basis of sex and age. Like appellant, Williams voluntarily withdrew her complaint and filed suit in Superior Court prior to a final agency decision on the merits. As does appellant, Williams argued that the withdrawal of her complaint from the agency did not preclude relief in a judicial forum. That contention failed. For District of Columbia government employees only, we concluded that the Human Rights Act requires the exhaustion of the available administrative remedies. *Id.* at 142.[4]

In *Williams*, we identified the administrative exhaustion requirement for government employees in D.C.Code § 1–2543 (1981).[5] That section requires the Mayor to establish procedural rules to govern Human Rights Act claims submitted by public employees and also provides that the agency shall make a final determination in such cases. Speaking of government employees only, we observed in *Williams* that "[b]y ignoring the established hearing procedures, appellant foreclosed the possibility that her claim might be resolved without recourse to the courts." 467 A.2d at 142.[6] Although generally recognizing the Council's express rejection of an administrative exhaustion requirement under the Human

Rights Act, D.C.Code § 1–2556 (1981), our reading of § 1–2543 led us to conclude that this rejection did not extend to claims made by government employees. 467 A.2d at 142.

*Williams* must be read in conjunction with *Lamont v. Rogers*, 479 A.2d 1274, 1278 & n. 3 (D.C.1984), in which we suggested that once a final agency determination has been made a government employee has the right to bring a civil action, under the statute, for damages or for whatever other remedies may be appropriate. *But see Williams v. District of Columbia, supra*, 467 A.2d at 142; *Dougherty v. Barry*, 604 F.Supp. 1424, 1442 (D.D.C.1985).

Appellant argues vigorously that *Williams* was wrongly decided. He maintains that there is neither a legal nor a rational foundation for distinguishing between government and other employees concerning the exhaustion of administrative remedies. Appellant points to the emphatic language of § 1–2556, permitting claimants to withdraw their administrative complaints without prejudice to the subsequent filing of a civil action, and denies that it is in any way overridden by the more veiled references in § 1–2543 to the procedures to be followed by government employees. As examples of decisions which declined to read an exhaustion requirement into federal civil rights statutes,

---

4. Neither here nor in *Williams* does it appear that the complainant attempted to refile the voluntarily withdrawn complaint with the OHR before filing the civil action. If they had done so, and the OHR had dismissed the complaint on the grounds of administrative convenience, then their administrative remedies would have been exhausted and *Williams* satisfied.

5. That section of the Human Rights Act provides:

   Notwithstanding any other provision of this chapter, the Mayor shall establish rules of procedure for the investigation, conciliation and hearing of complaints filed against District government agencies, officials and employees alleging violations of this chapter. The final determination in such matters shall be made by the Mayor or his designee.

   At the time appellant filed his complaint with the OHR, the rules of procedure referred to in the quoted section, governing complaints of dis-

crimination in the District of Columbia government, were contained in Mayor's Order 75–230, D.C.Stat. 510–28 (1975). The current rules are contained in Equal Opportunity Rules Governing Complaints of Discrimination in the District of Columbia Government, 31 D.C.Reg. 56–79 (1984). Neither the former nor the current version of these procedural rules states that D.C. Code § 1–2556 (1981), the section of the Human Rights Act which permits voluntary withdrawal of OHR complaints, is inapplicable to District government employees.

6. In *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), the Supreme Court described the fundamental purpose of the exhaustion doctrine as "the avoidance of premature interruption of the administrative process." *See generally* 4 K. Davis, Administrative Law Treatise § 26.01 (2d ed. 1983).

appellant cites *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). He insists that "[t]he Council's intent as expressed in the plain language of the statute should govern, and should be given full effect." Brief at 11. Appellant invites this division to overrule *Williams.*

We need not consider the merits of this invitation, as we could not accept it even if we so desired. Only the en banc court, not a division, can overrule a prior decision of this court. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971); D.C.App. Internal Operating Procedures (I.O.P.) § VIII H. If appellant is unhappy with *Williams,* that is a matter he must raise with the full court. D.C.App.R. 40; D.C.App.I.O.P. § XI; *see generally Kirk v. United States,* 510 A.2d 499, 502–03 (D.C.1986).

In light of *Williams,* the trial court did not err in dismissing the statutory claim of appellant, a public employee who had failed to exhaust the administrative remedies available to him under the Human Rights Act.[7]

### III

█ *Williams* establishes that public employees are required to exhaust their administrative remedies on statutory claims under the Human Rights Act. Appellant's common law claims were also dismissed. Relying on a different theory, the District argues that the dismissal of appellant's claims for intentional infliction of emotional distress and breach of contract was equally proper. As a public employee, says the District, the sole remedies available to appellant beyond those provided by the Human Rights Act are those provided by the Comprehensive Merit Personnel Act. D.C.Code §§ 1–601.1 to 1–637.2 (1981 & 1986 Supp.) ("the Merit Personnel Act"). In other words, the District contends that the passage of the Merit Personnel Act marked the end of all common law rights for public employees against the District as their employer.[8] We disagree.

Before focusing on specific statutory provisions of the Merit Personnel Act, it would be helpful to turn to general principles and historical background. Our analysis begins with a plain reading of the statute. *People's Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en

---

**7.** If the merits of the sexual orientation discrimination claim had been reached, the legislative history of the original human rights regulation, 34 DCRR §§ 1 to 35 (1973), might have proved valuable. One of its stated purposes was to ensure ready redress for police officers, such as appellant, who have been discriminated against by the District government:

> We urge, with the adoption of this regulation, that a priority be established to assure that the District government will be the first to comply completely with its spirit. Many vital steps have already been taken to this end, however *the journey is far from complete. For instance, there is the issue of complaints of discrimination against police officers.*

D.C. City Council, Comm. Report on Title 34, "Human Rights Law," 2 (Aug. 7, 1973) (emphasis added) (available in the District Building).

The Council's 1973 intent is indicative of that behind the Human Rights Act of 1977, because elevation of the pre-Home Rule regulation onto a statutory footing was designed only to "put our human rights law on a firm legal footing" and "to give that law the increased dignity and force of a statute." Council of the Dist. of

Columbia, Comm. Report on Bill 2–179, "The Human Rights Act of 1977," 2, 4 (July 5, 1977) (available in the District Building).

**8.** The District makes no argument that the Human Rights Act—as opposed to the Merit Personnel Act—abrogates the common law rights of injured individuals. Nor could that argument persuade. The Human Rights Act was designed to expand the remedies available to victims of discrimination, not merely to divert their grievances into a new channel. *Cf. Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974) (federal antidiscrimination statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), does not abrogate common law remedies). In the earlier proceeding here, the trial court erred in relying upon a theory that appellant was obliged to exhaust administrative remedies on his common law claims. On his nonstatutory claims, there were no administrative remedies that appellant could exhaust under the Human Rights Act. The District has abandoned this argument on appeal.

banc) (initial inquiry is to examine the language of the statute to determine if it is "plain and admits of no more than one meaning") (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979)). In the event of ambiguity, we follow the presumption that the legislature does not intend to take away common law rights unless that purpose is clearly expressed in the statute. "No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." *Shaw v. North. Pennsylvania R.R.*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879); *see generally* 3 SUTHERLAND STATUTORY CONSTRUCTION § 61 (4th ed. 1974).

One purpose of Congress in enacting the District of Columbia Self-Government and Governmental Reorganization Act of 1973, Pub.L. 93–198, 87 Stat. 774 (codified as amended in scattered sections of D.C.Code (1981 & 1986 Supp.)) ("the Home Rule Act"), was to "modernize, reorganize, and otherwise improve the governmental structure of the District of Columbia." D.C. Code § 1–201 (1981). In order to effect this purpose, Congress inserted into the Home Rule Act a requirement that by 1980, at the latest, the Council of the District of Columbia was to enact a merit system for District government employees. § 1–242.[9] After extensive input from a wide range of groups and individuals over a two-year period, the statute required by Congress was passed by the Council, signed by the Mayor on November 22, 1978, and the Merit Personnel Act gradually came into effect thereafter.

As part of the comprehensive coverage mandated by the Home Rule Act, the Council had to provide "employee disability and death benefits, all at least equal to those provided by legislation enacted by Congress, or regulation adopted pursuant thereto, and applicable to such officers and employees immediately prior to the effective date of the system established pursuant to [the Home Rule Act]." D.C.Code § 1–242 (1981). Thus, among its many other provisions, the Merit Personnel Act includes a system of workers' compensation for District of Columbia government employees. The title containing that system was said to establish "a program of employee's disability compensation for the District of Columbia." Committee Report on the Merit Personnel Act, *supra* note 9, at 202. Consistent with the condition that this system of employee disability and death benefits be at least equal to that provided by Congress at the time the Merit Personnel Act was adopted, the Committee Report explained that "[t]his title is essentially an enactment of current federal law." *Id.* The current federal law to which the Committee Report on the Merit Personnel Act referred was the Federal Employees Compensation Act, 5 U.S.C. §§ 8101 to 8193 (1982) ("FECA").

The District argues that by adopting the disability compensation scheme set forth in the Merit Personnel Act, the Council stripped appellant of the common law rights alleged in his complaint. If the District is correct, then appellant's tort claim was properly dismissed.[10] Bearing in mind both our principles of statutory construction and the settled meaning of the federal counterpart upon which the District's Act

---

9. Congress thus responded to mounting criticisms of the District's pre-Home Rule personnel management system, criticisms which culminated in the 1972 Report of the Nelsen Commission. REPORT OF THE COMMISSION ON THE ORGANIZATION OF THE GOVERNMENT OF THE DISTRICT OF COLUMBIA, H.R.Doc. No. 317, 92d Cong., 2d Sess. (1972) ("the Nelsen Report"); *see generally* Council of the Dist. of Columbia, Comm. Report on Bill No. 2–10, "District of Columbia Comprehensive Merit Personnel Act of 1978," 12–13 (July 5,

1978), *reprinted in* HOUSE COMM. ON THE DIST. OF COLUMBIA, 96TH CONG., 1ST SESS., DISTRICT OF COLUMBIA GOVERNMENT COMPREHENSIVE MERIT PERSONNEL ACT OF 1978 AND REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA 135–36 (Comm. Print 1979) ("Committee Report on the Merit Personnel Act").

10. As we explain below, it is unnecessary for us to separately discuss appellant's breach of contract claim. See *infra* note 12.

is modelled, we now turn to the specific provisions of the local law.

The relevant provisions of the Merit Personnel Act provide for disability compensation for District employees injured while in the performance of their duty. D.C.Code §§ 1–624.1 to 1–624.46 (1981 & 1986 Supp.). For the most part the disability compensation provisions of the Merit Personnel Act track those of its federal fore-runner, FECA.[11] Significantly, the two statutes are identical in their definition of what injuries are to be compensated. Subject to certain exceptions, both provide that the District of Columbia and the United States, respectively, shall pay specified compensation "for the disability or death of an employee resulting from personal injury sustained while in the performance of his [or her] duty." Compare D.C.Code § 1–624.2 (1981) (Merit Personnel Act) with 5 U.S.C. § 8102 (1982) (FECA).

The Merit Personnel Act and FECA also contain an identical provision excluding certain common law remedies against the government for disabilities within the compensation scheme. The exclusivity provision of the Merit Personnel Act reads as follows:

The liability of the District of Columbia government or an instrumentality thereof, under this subchapter or any extension thereof with respect to the injury or death of an employee, is exclusive and instead of all other liability of the District of Columbia government or the instrumentality thereof ... in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a work[ers'] compensation statute or under a federal tort liability statute....

D.C.Code § 1–624.16(c) (1981); compare id. (Merit Personnel Act) with 5 U.S.C. § 8116(c) (1982) (FECA).

We have never had occasion to determine the scope of the Merit Personnel Act's exclusivity provision. We have, however, done so with respect to the identical section of the federal scheme which formerly governed the remedies available to District of Columbia public employees. Because the language of the statutes is identical, and because the legislative history reveals that the Merit Personnel Act's compensation provisions are "essentially an enactment of current federal law," FECA decisions are entitled to considerable deference in determining the meaning of the Merit Personnel Act.

The FECA decisions shed valuable light on the purpose underlying the exclusivity clause. The Supreme Court has described the philosophy behind FECA's promise of guaranteed recovery and its simultaneous exclusion of certain common law remedies as the compromise "commonly found in workers' compensation legislation." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983). Public employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, in return for which they lose their right to sue the government. Id.; see also H.R.Rep. No. 836, 81st Cong., 1st Sess. 23 (1949) (legislative history of FECA's exclusivity provision); H.R.Rep. No. 739, 81st Cong., 1st Sess. 14–15 (1949) (same). The adoption of the exclusivity provision in the Merit Personnel Act manifests a similar intent on the part of the District of Columbia legislature.

■ Nonetheless, it remains the case that government employees only lose common law rights of recovery if the statute

11. We note that the Home Rule Act does not prohibit the Merit Personnel Act from providing coverage greater than that contained in the preexisting federal legislation. Contrast, e.g., D.C.Code § 1–624.28 (1981) (providing judicial review for District of Columbia government employees under Merit Personnel Act disability compensation scheme) with 5 U.S.C. § 8128 (1982) (precluding judicial review for federal government employees under FECA disability compensation scheme); see also Smith v. D.C. Dept. of Employment Servs., 494 A.2d 1340, 1343–44 (1985).

provides redress for the wrongs they assert. Put differently, the exclusivity provision replaces common law with statutory remedies. It does not take away common law remedies without giving something back in return. The disability compensation scheme is a quid pro quo. As the legislative history of the Merit Personnel Act makes clear, § 1–624.16 "states the limitations on the right of employees to receive other compensation [from the District of Columbia] *while receiving compensation under this subchapter.*" Committee Report on the Merit Personnel Act, *supra* note 9, at 204 (emphasis added).

For the exclusivity provision in D.C.Code § 1–624.16(c) (1981) to come into play, therefore, five elements must be shown: first, there must have been a "personal injury" within the meaning of the Merit Personnel Act, §§ 1–624.1(5), –624.2; second, the victim must be an "employee" of the District of Columbia government, §§ 1–624.1(1), –624.2; third, the injury must have been "sustained while in the performance of [the employee's] duty," § 1–624.2; fourth, the injury must either have caused death or else a "disability" within the meaning of the Merit Personnel Act, §§ 1–624.2, –624.5, –624.6; and, fifth, the injury must not have been caused by any of the three exceptions listed in the Merit Personnel Act—the employee's "willful misconduct," "intention to bring about the injury," or "intoxication," § 1–624.2. *See generally Tredway v. District of Columbia,* 403 A.2d 732, 735 (D.C.) (discussing provisions of FECA identical to those contained in the Merit Personnel Act), *cert. denied,* 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979); *Mason v. District of Columbia,* 395 A.2d 399 (D.C.1978) (same).

■ In the present case, it is undisputed that appellant is a District of Columbia government employee, that his grievances were allegedly sustained while in the performance of his duty as a police officer, and that they were not caused by any of the three exceptions specified in D.C.Code § 1–624.2 (1981). Our inquiry therefore focuses on whether his common law claims against the District are grounded upon a "disability" resulting from a "personal injury" for which the Merit Personnel Act provides guaranteed compensation, simultaneously excluding a tort action against the District. The answer is no. Our decision in *Mason v. District of Columbia, supra,* 395 A.2d 399, compels the conclusion that public employees do not lose their common law rights to sue for the injuries appellant alleges, because neither those injuries nor their consequences trigger the guaranteed compensation provisions of the Merit Personnel Act.

In *Mason,* a District of Columbia government employee sued the District and its police chief for assault and battery, false arrest and false imprisonment. She sought damages for "mental suffering," "humiliation" and "embarrassment" allegedly caused by the defendants. *Id.* at 402. There, we rejected the District's argument that Mason's alleged nonphysical "injuries" were within the ambit of FECA, and her common law claims therefore barred by its exclusivity provision. *Id.* at 403. We also noted that Mason had never alleged the existence of any "disability" which would trigger compensation under FECA. *Id.* at 404. In both respects, we held that the trial court had erred in dismissing her civil complaint.

Our conclusion that Mason's allegations against the District—the infliction of "humiliation," "embarrassment" and "mental suffering"—did not amount to an "injury" for FECA purposes compels us to reach the parallel conclusion here. Appellant's allegations—the infliction of "humiliation," "embarrassment," "public ridicule" and "personal indignity"—do not amount to an "injury" under the Merit Personnel Act. Appellant's alleged injuries do not fall within the ambit of the statute. And, equally fatal to the District's case, appellant has never alleged the existence of a "disability" resulting from the psychic injuries he claims. For both reasons the Merit Person-

nel Act is not a source of guaranteed compensation.

Thus, the trial court erred in dismissing appellant's common law claims. Because appellant does not allege an "injury" causing a "disability" which, in combination, would entitle him to guaranteed compensation under the Merit Personnel Act, the exclusivity provision in § 1-624.16(c) of that statute has no effect on his ability to exercise whatever common law rights are available to him.[12]

Under *Williams,* we are bound to affirm the dismissal of appellant's employment discrimination claim under the Human Rights Act. Under *Mason,* we are bound to reverse the dismissal of his common law claims; those we remand for further proceedings consistent with this opinion.

*Reversed in part; remanded in part.*

ROGERS, Associate Judge, concurring in part, dissenting in part:

The majority holds that exclusivity provisions found in the District of Columbia Comprehensive Merit Personnel Act, D.C. Code §§ 1-601.1 to -637.2 (1981 & 1986 Supp.), do not bar appellant Newman from maintaining a common law action for intentional infliction of emotional distress.[1] In reaching its conclusion, the majority gives cursory treatment to the issue whether the District of Columbia Human Rights Act preempts the common law action for intentional infliction of emotional distress, and ignores the separate, secondary question whether employees nonetheless are required to exhaust the available administrative remedies when the underlying facts of the common law action are identical to those covered by the Human Rights Act. Similarly, in holding that the Merit Person-

nel Act does not preempt the common law action for intentional infliction of emotional distress, the majority fails to address whether employees nonetheless must exhaust available administrative remedies when the underlying facts are covered by the statutory scheme. For the reasons set forth below I conclude that District of Columbia employees first must exhaust their administrative remedies under the Human Rights Act whenever the underlying basis of their complaint involves discrimination in the workplace.

Although related, preemption and exhaustion issues are analytically distinct. Preemption raises the question whether the legislature intended to foreclose a common law right by substituting a new or conflicting provision or by otherwise occupying the field. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The question whether to impose an exhaustion requirement typically involves a more open ended inquiry. The issue is raised whenever the legislature has erected a procedurally and substantively elaborate structure for handling a particular kind of claim. Courts then generally presume that the legislature contemplated an exhaustion requirement, but will engage in a balancing of various factors in certain circumstances. *See* 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 26.-1, at 414-15 (1983). Two important factors cutting against imposing the requirement would be the futility of resorting to the agency, *Apartment & Office Building Association v. Washington,* 343 A.2d 323 (D.C.1975) (challenge of statutory authority), and, where relief would necessarily be incomplete, the time and delay of pursuing other agency relief. Factors cutting in favor of the requirement are the need for

12. Our discussion focuses on appellant's tort claim. The exclusivity provision of the Merit Personnel Act is designed to exclude common law redress for certain injuries leading to disability. That provision will, in most cases, be raised in the context of a tort action. In light of our conclusion that appellant's tort claim is not barred by the exclusivity provision of the Merit Personnel Act, we need not decide here the

more complex question whether a breach of contract claim, sharing the same factual setting as the tort claim, might also be barred by the exclusivity of Merit Personnel Act remedies.

1. Neither I nor the majority reach the issue raised by appellant's breach of contract claim. *Supra* at 706 n. 12.

coherent and complete development of the factual record, the importance of reflecting the agency's expertise or policy preferences in the final result, and the probability that the agency will satisfactorily resolve the question without judicial review. *See* K. DAVIS, *supra,* at 414–15.

*The D.C. Human Rights Act*

The District of Columbia did not raise the argument that the Human Rights Act preempts any common law torts, and the majority concludes that it did not. *Supra* at p. 702 n. 8. I agree, but would analyze the issue differently.

The majority relies primarily on *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974), for the proposition that victims of discrimination should not have their avenues of redress curtailed by an act designed to expand their remedies. *Supra* at 702 n. 8. This begs the question whether the act was in fact designed to expand both remedies and channels. Moreover, the *Alexander* case involved an interpretation of Title VII of the Civil Rights Act of 1964. The analogy to the Human Rights Act is imperfect because Title VII applied to the context of private employment and thus did not implicate sovereign immunity. More importantly, the legislative history behind Title VII explicitly "manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander, supra,* 415 U.S. at 48, 94 S.Ct. at 1019; *see also Johnson v. Railway Express Agency,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975).

Subsequently, the Supreme Court in *Brown v. General Services Administration, supra,* reached precisely the opposite preemption conclusion with regard to the federal employment antidiscrimination provisions that were added to the Civil Rights Act by the Equal Employment Opportunity Act of 1972. *See also Kizas v. Webster,* 227 U.S.App.D.C. 327, 707 F.2d 524 (1983). From the fact that Congress perceived then current remedies to be ineffective, the Supreme Court inferred that "the congressional intent in 1972 was to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. General Services Administration, supra,* 425 U.S. at 829, 96 S.Ct. at 1966. The Court's primary reliance, however, was on the "balance, completeness, and structural integrity" of the act. *Id.* at 832, 96 S.Ct. at 1967. In upholding the dismissal of the employee's other statutory claims, the Court wrote that the:

> crucial administrative role ... in the eradication of employment discrimination would be eliminated 'by the simple expedient of putting a different label on [the] pleadings.' *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, [93 S.Ct. 1827, 1836, 36 L.Ed.2d 439] (1973). It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.

*Id.* at 833, 96 S.Ct. at 1968. Finally, the Court cited the proposition that, in a variety of contexts, a precisely drawn, detailed statute preempts a more general remedy. *Id.* at 834, 96 S.Ct. at 1968.

Under the D.C. Human Rights Act, only public employees are required to submit their claims through an administrative proceeding. Thus, the instant case is facially more similar to *Brown* than it is to *Alexander.* The Human Rights Act is structurally different from the Civil Rights Act and the Equal Employment Act, however, because it makes a single general, and substantively identical, grant of protection from discrimination to the entire public. District Government employees are only treated differently from a procedural perspective. Section 1–2543 provides that:

> Notwithstanding any other provision of this chapter, the Mayor shall establish rules of procedure for the investigation, conciliation and hearing of complaints filed against District government agencies, officials and employees alleging vio-

lations of this chapter. The final determination in such matters shall be made by the Mayor or his designee.

Also, unlike the Equal Employment Act, the Human Rights Act does not impose liability on the District through an elaborate and comprehensive structure. Instead, it merely requires the Mayor to establish a system that will allow the District to process such claims before making an appearance in court. Therefore, in looking at the statute alone, there is insufficient evidence to support the proposition that the Council of the District of Columbia intended to eliminate any common law rights. Accordingly, *Alexander* would govern the rights given to the public, and the statute gives District Government employees the same protections.

Common law causes of action can also be abrogated by regulations promulgated within the scope of the administrator's authority. No direct abrogation can be found in this case, but the granting of any additional rights could also be considered evidence that the administrator, in this case the Mayor or his delegate, intended to replace a particular cause of action. Section 101.1 of the Mayor's "Equal Employment Opportunity Rules," 31 D.C.Reg. 56, states that the "provisions of these rules shall govern the *processing of any matter involving discrimination ...*" (emphasis supplied), and other provisions include and define actions such as sexual harassment as a form of discrimination. Still, nothing in these regulations gives any indication of an intent to alter substantive rights,[2] and there is no reference to the intentional infliction of emotional distress or to the pertinent compensatory damages.

The survival of a common law cause of action, however, does not also decide the question whether administrative remedies must be exhausted. In this case, § 101.1 of the Mayor's rules suggest that all claims arising out of discrimination in the workplace should be processed through the established administrative procedures. While § 1–2543 of the Human Rights Act refers only to "violations of this chapter," this language does not speak to the question whether other claims supported by the same facts must await administrative adjudication of claims under this chapter. But requiring such exhaustion would ensure coherent, consistent, and complete development of the factual record, would incorporate the agency's expertise or policy preferences in the final result, and may lead to the satisfactory resolution of many questions without judicial review. *See* K. DAVIS, *supra*, at 414–15.

The objection that requiring Newman to exhaust his administrative remedies would be futile because the agency will not adjudicate a claim for the intentional infliction of emotional distress, and he will inevitably have to enter a court in order to obtain compensatory damages for emotional distress, fails for several reasons. First, the futility doctrine is ordinarily confined to situations in which the agency lacks the power to address the central issue, such as the scope of its authority or a constitutional claim, or in which there is no reasonable chance that it will do so. *See, e.g., Apartment & Office Building Association v. Washington, supra* (challenge of statutory authority). Second, there is a strong possibility that Newman would be able to obtain a full redress of his injuries through the prescribed proceedings. There are no cases on the subject, but the statutory language of § 1–2556 refers only to "damages," which presumably would be interpreted in the standard broad fashion.[3] *See*

---

2. The inference from § 100.5, that only certain specified rights remain, is too thin a reed on which to find an intent to abolish common law remedies. *See, e.g., Shaw v. North Pennsylvania R.R.*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879). Section 100.5 provides that D.C. employees retain "certain rights" to file complaints with EEOC, 42 U.S.C. § 2000e–5, and to pursue remedies under the Age Discrimination in Employment Act, 29 U.S.C. § 626, 633.

3. The cases decided under Title VII, 42 U.S.C. § 2000e *et seq.* are split on the issue whether damages for emotional distress can be recovered. For cases authorizing such damages, see *Williams v. Trans World Airlines*, 660 F.2d 1267

*also Lamont v. Rogers,* 479 A.2d 1274, 1277 (D.C.1984) (some compensatory damages available under section 19(b) of Mayor's Order). Finally, the factors in favor of imposing an exhaustion requirement outweigh any futility present. *Cf. Williams v. District of Columbia,* 467 A.2d 140, 142 n. 7 (D.C.1983).

*The D.C. Comprehensive Merit Personnel Act*

Under this analysis, the majority need not have reached the issue whether the Merit Personnel Act preempts all work related common law claims, or the separate issue whether an exhaustion remedy nonetheless applies. Although the majority's conclusion on the preemption issue may be correct, it would be correct only because worker's compensation statutes have traditionally been limited to disabilities that have physical manifestations and that limit the ability to work. Thus, exhaustion should not be required for this reason, and because it would be more futile and less helpful than in the employment discrimination context.

The Merit Personnel Act provides specified compensation for "the disability or death of an employee resulting from personal injury sustained while in the performance of his [or her] duty." D.C.Code § 1–624.2 (1981 & 1986 Supp.). The salient issue is whether the phrase "physical inju-

ry" should be construed to include the intentional infliction of emotional distress.[4]

The Personnel Act is similar in pertinent part to the Federal Employees Compensation Act, 5 U.S.C. §§ 8101–8193 (1982) ("FECA") and most other workers' compensation laws. *See* majority opinion, *supra,* at 13–14. In a directly analogous case, as the majority points out, this court has ruled that FECA does not cover claims for emotional distress.[5] *Mason v. District of Columbia,* 395 A.2d 399 (D.C.1978). The court wrote that mental suffering caused by humiliation and embarrassment "would not be within the ambit of FECA" and. that the plaintiff need not have proceeded thereunder. *Id.* The court quoted with approval the following language:

> The type of injuries covered in 5 U.S.C. § 8101(5) includes injury by accident and disease; it does not appear to include such claims as are presented here for discrimination, mental distress, or loss of employment.

*Id.* at 403, quoting *Sullivan v. United States,* 428 F.Supp. 79, 81 (E.D.Wis.1977). More recently, another court has written that FECA applies only to "job-related physical injury [and not to] mental suffering, humiliation, embarrassment or loss of employment." *Lawrence v. United States,* 631 F.Supp. 631, 636–37 (E.D.Pa.1982).[6]

---

(8th Cir.1981); *Humphrey v. Southwestern Portland Cement Co.,* 369 F.Supp. 832, *rev'd on other grounds,* 488 F.2d 691 (5th Cir.1973).

**4.** The majority assumes that a lack of coverage precludes any finding of preemption, arguing that the workers' compensation scheme entails a strict *quid pro quo.* The issue is not so simple. The D.C. Council could have intended to deny emotional distress recovery entirely. Moreover, the "bargain" status of the scheme must be evaluated on the comprehensive programmatic level, and not with respect to specific individual provisions.

**5.** D.C.Code § 1–624.1(5) defines injury as:

In addition to injury by accident, a disease proximately caused by the employment and damage to or destruction of medical braces, artificial limbs and other prosthetic devices which shall be replaced or repaired, and such time lost while such device or appliance is

being replaced or repaired: Except, that eyeglasses and hearing aids would not be replaced, repaired or otherwise compensated for, unless the damage or destruction is incident to a personal injury requiring medical services.

The definition of "injury" is identical under § 8101 of FECA.

**6.** In *Mason, supra,* 395 A.2d at 403, the court noted state cases that have found coverage of nonphysical injury are less persuasive because they involved psychological conditions that were so severe as to constitute partial or total disability. *See Pathfinder Co. v. Industrial Commission,* 62 Ill.2d 556, 343 N.E.2d 913 (1976) (severe emotional shock); *Simon v. R.H.H. Steel Laundry,* 25 N.J.Super. 50, 95 A.2d 446 (Hudson County Ct.1953) (severe nervous condition); *Kalikoff v. John Lucas & Co.,* 271 App.Div. 942, 67 N.Y.S.2d 153 (1947) (psychoneurosis). More-

The clear emphasis of workers' compensation laws is on protecting against physical disability. *Compare Tredway v. District of Columbia*, 403 A.2d 732, 734 (D.C.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979); *Griffin v. United States*, 703 F.2d 321, 322 n. 3 (8th Cir.1983); 2A A. LARSON, WORKMEN'S COMPENSATION LAW § 65.14, at 12–9 (1982).

For similar reasons, there would be little purpose served by requiring an exhaustion of administrative remedies. There are substantial issues of fact, such as intent and outrageousness, that would not be addressed in an administrative hearing under the Personnel Act. There is only a very small chance that damage claims would be satisfied by any workmen's compensation schedule. Finally, the agency would have little to offer in the way of expertise or legitimate policy emphasis.

Accordingly, I would affirm the dismissal of both the common law and statutory causes of action for failure to exhaust the administrative remedies under § 1–2543 of the Human Rights Act.

over, FECA is more similar to, and is the predecessor of, the Merit Personnel Act.