**Charles BRIDGES, Plaintiff,**

**v.**

**Sharon Pratt KELLY, et al., Defendants.**

**Civil Action No. 94–1559(RCL).**

United States District Court,
District of Columbia.

Sept. 26, 1997.

Charles Bridges, Baltimore, MD, pro se.

Mark D. Back, District of Columbia Lottery Control Bd., Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on defendants' motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be grant-

ed and, in the alternative, for summary judgment.

## BACKGROUND

Plaintiff Charles Bridges, a Vietnam and Gulf War veteran, served as an Attorney Advisor for defendant District of Columbia in its Department of Administrative Services'[1] Office of Regulatory Compliance until his discharge in 1993. Plaintiff contends that his troubles began less than two months after his return from active duty in the Gulf. On October 1, 1991, the District notified plaintiff that he was to be discharged pursuant to a reduction-in-force. In response, plaintiff filed a lawsuit on October 15, 1991, alleging that the act authorizing the reduction-in-force violated his fifth amendment rights to due process and equal protection. Plaintiff then learned that his prospective discharge had been cancelled, in view of his retention rights under the Veterans Readjustment Act, which allows the veteran-employee a one-year grace period upon return from active duty. However, his lawsuit remained pending. Plaintiff alleges that he "was thereafter subjected to a continuous pattern of harassment for nearly two years by the defendants in retaliation[.]" Complaint ¶ 5. "This harassment consisted of threatened illegal adverse personnel actions, threatened unmerited unsatisfactory performance ratings, interference with independence during quasi-judicial functions, and censorship for expression of concern in regard to the widespread mismanagement, waste, fraud, and abuse, demonstrated in evidence before him, and elsewhere, within the District government." Compl. ¶ 5 at p. 5.

On June 18, 1993, plaintiff was notified that he was subject to a reduction-in-force "as a result of a shortage of funds," Compl., Exh. B at p. 1, effective July 23, 1993. Plaintiff filed an administrative appeal on August 13, 1993. Plaintiff filed this complaint before this Court on July 15, 1994, seeking reinstatement and $28 million in compensatory and punitive damages and alleging that "plaintiff's discharge was by information, belief and evidence a sham, an illegal scheme/device to oust him from his job by the said defendants in obvious reprisal for a pending lawsuit and subsequent appeal, as well as for other illegal reasons as set forth in the complaint." Compl. ¶ 42. The Corporation Counsel for the District on the behalf of defendants then filed a motion to dismiss the complaint in light of the "*Younger*" doctrine of equitable restraint and for failure to exhaust local administrative remedies." *Bridges v. Kelly*, 84 F.3d 470, 478 (D.C.Cir. 1996). This motion to dismiss was granted by the District Court,[2] *see Bridges v. Kelly*, No. 94–1559 (D.D.C. Jan.18, 1995) (Order), but that decision was reversed by the D.C. Circuit and the case was remanded to this Court.[3] *See Bridges v. Kelly*, 84 F.3d 470 (D.C.Cir. 1996). Upon remand, defendants were given the opportunity to file an answer, or otherwise respond to the complaint, and they responded to the complaint by submitting the motion that is the subject of this opinion.

## DISCUSSION

Plaintiff alleges "violation of [his retention rights under the Veteran's Readjustment Act] . . . , retaliation for his exercise of first amendment [free speech] rights . . . , deprivation of his substantive rights without due process of law . . . , and reprisal and retaliation for the exercise of rights pursuant to 42 U.S.C. § 1983." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss and, in the Alternative, Summary Judgment. Allowing for the intricacies of § 1983 jurisprudence, the Court will take each claim for relief—and its evidentiary support, if necessary—in turn.

█ "In appraising the sufficiency of the complaint we follow, of course, the accepted

---

1. The Department of Administrative Services is also named as a defendant.

2. The District Court Judge at the time was the Honorable Charles R. Richey. He recused himself upon remand, and the case was randomly reassigned to the undersigned judge.

3. In the meanwhile, citing innumerable delays in adjudicating his claim, plaintiff received approval of a voluntary dismissal of the administrative appeal on June 17, 1996.

rule that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprived him of that right acted under color of state or territorial law."[4] *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980).

## VIOLATION OF VETERANS READJUSTMENT ACT RIGHTS

■ Plaintiff alleges that the defendants violated his rights under the Vietnam Era Veterans Readjustment Act. *See* 38 U.S.C. § 2021 et seq. (1988 and 1993 supp). While the plain meaning of § 1983 provides for the redress of deprivation of federal *statutory* as well as constitutional rights, *see Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), not all such rights are protected. If Congress creates a compre-

hensive enforcement scheme within the statute, then it has "specifically foreclosed a remedy under § 1983." *Smith v. Robinson,* 468 U.S. 992, 1004 n. 9, 104 S.Ct. 3457, 3464 n. 9, 82 L.Ed.2d 746 (1984); *see Lampkin v. District of Columbia,* 307 U.S.App. D.C. 155, 157, 27 F.3d 605, 607 (1994) ("A statute will not be deemed enforceable under section 1983 if Congress did not intend to create any enforceable rights in it (which may be evidenced by the provision of a comprehensive remedial scheme in the statute itself)[.]").

■ With these particulars in mind, plaintiff points to § 2021 of the act for statutory support. While § 2021 delineates some of the reemployment rights of veterans working for the District of Columbia, *§ 2023* delves into much more detail about the manner in which Congress intended those reemployment rights to be enforced. § 2023 empowers the Director of the Office of Personnel Management to issue any necessary orders to the District of Columbia government concerning its compliance, from reimbursement for back pay to securing the unemployed veteran another job in the District government. *See* 38 U.S.C. § 2023 (1988 and 1993 supp). This stands in stark contrast to the provisions made for employees of state gov-

---

4. To begin with, plaintiff has named as one of the defendants the Government of the District of Columbia. The District is treated as a municipality for the purposes of 42 U.S.C. § 1983. *See Dorman v. District of Columbia,* 888 F.2d 159, 162 citation here (1989). "A municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Department of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. Because no legally-cognizable injury within the meaning of § 1983 was suffered by the plaintiff at the hands of the other named defendants, *see infra,* and the plaintiff proffers no other suspects and/or injuries, this Court does not find it necessary to determine the actual policy makers. Without a violation of a federal right, there is no cause of action against the District within the meaning of § 1983. The Government of the District of Columbia is therefore dismissed from this action.

Plaintiff has sued Sharon Pratt Kelly, Bruce A. Marshall, Lorraine Britton, Robert H. Murphy,

Mary Montgomery, and Lorraine A. Green in both their official and individual capacities. "Official capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(quoting *Monell v. Department of Social Services,* 436 U.S. 658 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Those suits therefore meet the same disposition as the one lodged against the District specifically. The claims against the above officials in their individual capacities are treated elsewhere. Plaintiff has also sued the Department of Administrative Services and the Office of Personnel, agencies of the District of Columbia. Pursuant to Federal Rule of Civil Procedure 9(a), defendants contend that neither agency is *sui juris.* Capacity to sue or be sued is governed by state law, *see* Fed.R.Civ.P. 17(b), and the District of Columbia has not seen fit to confer it on either of these agencies. *See* D.C.Code Ann. § 1–604.2 (1981 and 1997 supp); § 1–101 et seq. (1981 and 1997 supp); *Hinton v. Metropolitan Police Department,* 726 F.Supp. 875 (D.D.C.1989); *cf. Braxton v. National Capital Housing Authority,* 396 A.2d 215 (D.C.1978). These parties are therefore dismissed.

ernments or private employers. *See* 38 U.S.C. § 2022 (1988 and 1993 supp). In these cases, jurisdiction is granted to the District Court to ensure compliance. *See id.* Congressional intent precludes enforceable § 1983 retention rights, *cf. Grady v. El Paso Comm. Coll.,* 979 F.2d 1111, 1113 (5th Cir.1992), and therefore this claim is dismissed.[5]

## DEPRIVATION OF PROPERTY RIGHTS

■ Plaintiff contends that he has been deprived of a property interest—his substantive bumping rights and a rightful determination of his competitive level. "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[6]

Plaintiff cites to District of Columbia Personnel Regulation § 908.9 which states,

"[t]he affected employee shall be entitled to only one (1) round of competition, which shall be limited to his or her competitive level." He received his one level of competition at his competitive level. Nevertheless, plaintiff contends that his competitive level was determined incorrectly. This violation cannot have constitutional significance. If it did, any violation of state law by state actors concerning public employees would be actionable under § 1983. This Court does not exist to remedy every mistake made by state actors. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952)(for a violation of the substantive Due Process Clause to lie, the conduct must "do more than offend some fastidious squeamishness."). This claim is therefore dismissed.

## RETALIATION FOR FILING A LAWSUIT

■ Plaintiff argues that he was harassed and discharged in retaliation for the filing of his 1991 lawsuit. While this circuit has not yet addressed the nature and contours of this protected interest,[7] other circuits have, for the most part,[8] come to the conclusion that

5. Plaintiff was never actually discharged during the one-year grace period. He argues that he was constructively discharged due to the harassment inflicted upon him because of his retention rights. To assert constructive discharge, however, among other things, one must first quit. Plaintiff did not.

6. Courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open ended." *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

7. It is hard to understand why plaintiff should be allowed to sue for redress of this grievance. Plaintiff has not been directly impeded in his attempt to file this or the previous lawsuit. The very fact that he has come this far in this action indicates clearly that his access to the courts has not been impeded. That said, this case does not even pass muster under the formulation adopted by other circuits to address this malleable right.

8. The Third Circuit stands apart from its peers and argues that retaliation for filing a lawsuit implicates the Petition Clause of the First Amendment and therefore deserves to be treated differently than other First Amendment retaliation cases. *See San Filippo v. Bongiovanni,* 30

F.3d 424 (3rd Cir.1994); *See also* Julie M. Spanbauer, *The First Amendment Right to Petition Government for Redress of Grievances: Cut from a Different Cloth,* 21 Hastings Const. L.Q. 15 (1993); Margo Pave, *Public Employees and the First Amendment Petition Clause,* 90 Nw. U.L.Rev. 304 (1995); Kara Elizabeth Shea, *San Filippo v. Bongiovanni: The Public Concern Criteria and the Scope of the Modern Petition Right,* 48 Vand. L.Rev. 1697 (1995). In other words, if a plaintiff files a lawsuit that is not utterly baseless, that plaintiff may not be dismissed in response. So a plaintiff who merely states a grievance—one that is not of public concern—may be fired in response but a plaintiff who files a lawsuit addressing the same matters may not be. This incongruity implicates concerns about arrogation of judicial power beyond what was foreseen by the drafters of the 1871 Civil Rights Act (which was ostensibly about equal rights for the newly-freed slaves). *See Crawford–El v. Britton,* 93 F.3d 813, 830 (D.C.Cir.1996) (Silberman, J., concurring). That said, this formulation has been criticized by other courts and has not been adopted by any other circuit. *See Wright v. Illinois Dep't. of Children & Family Services,* 40 F.3d 1492, 1505 (7th Cir.1994) ("[T]here is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short airing private gripes in the

the government may not dismiss an employee for filing a lawsuit so long as that lawsuit implicates matters of public concern.[9] They derive this standard from the free speech retaliation cases; it appears appropriate to protect the *free speech aspects* of the filing of a lawsuit from retaliation. If this were not done, then the filing of a lawsuit would put the employee in a worse position than one who does not file the lawsuit but instead speaks out. A federal system predicated on judicial review could not countenance that.

▇▇▇ Whether the prior litigation was a matter of public concern is a matter of law for the Court to decide. *Cf. Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)(in the comparable context of free speech retaliation cases). The prior litigation in this case involved a challenge to the constitutionality of a reduction-in-force as applied to the plaintiff. This was a challenge made by the plaintiff in his role as an employee not as a citizen. The claim rests on a matter of private concern and is therefore dismissed.

### RETALIATION FOR EXERCISE OF FREEDOM OF SPEECH

▇▇▇ Up to this point, the Court has disposed of the claims before it on the motion to dismiss for failure to state a claim upon which relief can be granted.[10] As to the claim involving retaliation for exercise of plaintiff's freedom of speech, it is properly resolved on summary judgment.

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is

form of a [judicial] complaint ... cannot alter their status as private gripes.").

9. Even if the lawsuit addresses matters of public concern, the defendants may still dismiss the employee because of the lawsuit as long as the dismissal serves the important governmental purpose of providing efficient public services. *Cf. Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (inaugurating this balancing test in the free speech retaliation arena). Because the previous lawsuit filed by the plaintiff does not address a matter of public concern, it is not necessary to consider whether or not the dismissal of the plaintiff served that purpose.

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the plaintiff." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When the burdens of production and persuasion at trial rest on the non-moving plaintiff, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). At that point, "[a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The substance of the plaintiff's allegations are as follows: on July 20, 1992, Mr. Culpepper, plaintiff's supervisor, issued a letter of direction detailing the policy on communications with the City Auditor or the auditor's staff. *See id.*, Exh. I. Plaintiff had apparently met with the City Auditor without informing Mr. Culpepper. Mr. Culpepper argued that his "concern [was] that as a two (2) person division, we can more efficiently and

10. Defendants also moved for dismissal based on lack of subject matter jurisdiction. They argue that the plaintiff is trying to manufacture a federal claim to get into federal court. They therefore point to Fed.R.Civ.P. 12(b)(1). The better resolution would focus on the lack of merit in the plaintiff's case and end consideration there. As to any state law claims contained within the complaint, because all the federal claims are dismissed, this Court exercises its discretion under 28 U.S.C. § 1367(b) to decline jurisdiction over any state law claims.

effectively utilize our time ... [if] we could determine who should represent the Legal Services Division at agency and outside meetings." *Id.* Culpepper concluded by indicating that the plaintiff should obtain approval from his supervisors before "meet[ing] with any agency that has oversight authority [and that any future] deviation ... will result in the appropriate corrective action." *Id.* Plaintiff alleges that this letter "constituted a blatant act of intimidation of employees from reporting waste, fraud and abuse of public funds by government officials." Compl. ¶ 27. He also alleges that his discharge was motivated by his exercise of free speech.[11]

First, the censorship. While reporting of waste, fraud and abuse [12] constitutes a matter of public concern, its importance does not automatically override concerns about efficient administration of public services. It is clear from the substance of the letter that the plaintiff's supervisor wished to coordinate with the plaintiff as to who would speak for the agency. Had plaintiff sought approval from his supervisors to talk to outside investigators and then been denied without good reason, he might have a case. This is not what plaintiff did.

Now, the discharge.[13] Here, plaintiff has no leg to stand on. He was discharged pursuant to a reduction-in-force that was implemented at various levels of the District of Columbia government in order to reduce excessive spending.[14] One staple of § 1983 jurisprudence is that if the defendant can proffer a legitimate reason for dismissing the plaintiff, regardless of the illegitimate reasons, then the defendant is entitled to judgment entered in its favor. *See Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) ("A rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.... The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct.").

Plaintiff proffers two reasons why this explanation should be rejected. First, curiously, he argues that since no statutory functions were abolished, he could not have been dismissed in an effort to reduce costs. However, a good government should attempt to continue to provide the same or similar services while tightening its belt. Therefore, it is in no way incongruous that no statutory functions were abolished and he was dismissed as a result of a shortage of funds.

His second argument is as follows:

[I]n anticipation of the June 18, 1993, reduction-in-force, the Agency, without notice to Plaintiff, altered plaintiff's official position description without proper recertification and reclassification. In so doing, the Agency conducted the reduction-in-force in which plaintiff was summarily discharged based on an invalid, fraudulent, materially altered position description[.]

Compl., ¶ 15. Plaintiff therefore contends that defendants "deliberately, maliciously and willfully tailored plaintiff's competitive level so that plaintiff was the only person comprising his competitive level, and the only person consequently, on the retention register [in order to have the plaintiff] summarily discharged[.]" Compl. ¶ 11. Plaintiff avers that his position "was not so unique as to justify a one-person competitive level[.]" *Id.*

---

**11.** Under the rule announced in *Crawford–El,* plaintiff must adduce clear and convincing evidence of motive on the part of the defendants. *See Crawford–El v. Britton,* 93 F.3d 813 (D.C.Cir. 1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997). To say the least, the plaintiff has not done that. Looking at the complaint, there is not a single, non-conclusory assertion of retaliatory motive. This analysis applies equally well to the other two claims that rely upon motive as an essential element—the veterans' rights claim and the lawsuit claim.

**12.** Ironically, the plaintiff was discharged to reduce government spending.

**13.** The argument, *supra,* concerning efficient administration of public services in reference to the censorship applies here as well.

**14.** The foregoing analysis applies equally well to the discharge aspects of the claims involving retaliation for exercise of veteran's rights and filing a previous lawsuit.

¶ 13. He therefore contends that the legitimate reason for discharge is actually a cover for a more nefarious motive.

Yet all this appears to be merely conjecture. Plaintiff adduces no specific facts within his own personal knowledge that would in any way allow a trier of fact to believe that this conspiracy actually existed.[15] He produces no depositions or affidavits of other witnesses who could testify from their own personal knowledge of facts that this was anything more than a garden variety RIF. As Judge Hand commented, "[t]rue it may be too strong to say that it is impossible to conjure up any conceivable answer.... But if a motion for summary judgment is to have any office whatever, it is to put an end to such frivolous possibilities when they are the only answer[.]" *Deluca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (2nd Cir.1949), *cert. denied,* 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950). Absent some colorable evidence to the contrary, the reason proffered for the discharge of plaintiff, i.e., that of shortage of funds, is legitimate, and this claim is therefore dismissed.

## CONCLUSION

For the reasons set forth above, this Court DISMISSES all federal claims WITH PREJUDICE. Insofar as the complaint states claims relying on state law, this Court DISMISSES these claims WITHOUT PREJUDICE.

A separate order shall issue this date.

---

**15.** This is both a rule of evidence and summary judgment. *See* Fed.R.Evid. 602; Fed.R.Civ.P. 56(e). The Court has previously indicated to the plaintiff the contours of the summary judgment rule and the importance of affidavits in the resolution of his case. *See Bridges v. Kelly,* No. 94–

1559 (D.D.C. Jan.10, 1997). Plaintiff has proffered a verified complaint, but no other affidavits whatsoever. Plaintiff was also instructed as to the possibility of a 56(f) affidavit. *Id.* He did not submit one.