Richard S. ARMSTRONG, Plaintiff,

v.

**DISTRICT OF COLUMBIA PUBLIC LIBRARY, et al., Defendants.**

**Civil Action No. 94–0392(EGS).**

United States District Court, District of Columbia.

Aug. 21, 2001.

Mary E. Borja, Wiley Rein & Feilding, Washington, DC, for plaintiff.

Nadine Wilburn, Assistant Corporation Counsel, D.C., Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge

Plaintiff Richard Armstrong, a homeless man, challenges the District of Columbia Public Library's appearance regulation that he claims Library personnel applied against him to deny him access to the Martin Luther King Memorial Library (the "Library"), because of his "objectionable appearance." Armstrong has named as defendants the District of Columbia, the D.C. Public Library and its Director, Dr. Hardy Franklin, as well as eight members of the Library Board of Trustees, and two unnamed Library employees. The Director and trustees are sued in both their official and personal capacities.

Plaintiff alleges that the regulation in question violates the District of Columbia Human Rights Act ("DCHRA"), D.C.Code Ann. § 1-2501, *et seq.*, and its prohibition against appearance discrimination. Plaintiff also claims that the appearance regulation violates 42 U.S.C. § 1983, and the United States Constitution because, on its face, the regulation is both vague and overbroad, in violation of the First Amendment, and because application of the regulation is arbitrary and without fair notice, in violation of the Due Process Clause of the Fifth Amendment. Moreover, plaintiff contends that the regulation violates equal protection under the Fifth Amendment because no rational basis exists to support this regulation, the purpose of which, he alleges, is to intentionally discriminate against the homeless. Plaintiff seeks injunctive relief enjoining defendants from applying the appearance regulation in a manner that violates the Constitution or any statute, and declaratory relief pursuant to 28 U.S.C. § 2201 that the regulation in question violates the U.S. Constitution, the D.C. Human Rights Act, and 42 U.S.C.

§ 1983, as well as compensatory and punitive damages.

Pending before the Court are defendants' motion for summary judgment on all claims and plaintiff's cross-motion for partial summary judgment on all but the Fifth Amendment equal protection claim.[1] Upon consideration of those pleadings, the undisputed facts and relevant law, and the hearing held on the motions, plaintiff's motion for partial summary judgment is **GRANTED** as to plaintiff's First Amendment and Fifth Amendment Due Process Clause claims; and defendant's motion for summary judgment as to plaintiff's DCHRA claim is **GRANTED** due to plaintiff's failure to exhaust administrative remedies.

## I. BACKGROUND

In 1979, the D.C. Public Library promulgated Guidelines for Handling Security Matters that include a regulation instructing Library personnel to deny access to individual patrons with "objectionable appearance." Although the term "Loiterers and Vagrants" was deleted from the title of the Guideline during branch-wide policy revisions in 1982, the specific appearance regulation at issue, and its "objectionable"

criteria remained unchanged.[2] Deposition testimony revealed that a "proliferation of more street people and more homeless" in 1979 "precipitated the need for this policy." Pl.'s Reply Ex. B, Johnson 5/1/96 Dep. at 35.

Plaintiff alleges that on Sunday, February 14, 1993, he attempted to enter the Martin Luther King Memorial Library. Plaintiff was residing in an area shelter at the time, and he came to the Library wearing a shirt, shoes, pants, several sweaters, and two winter jackets to stave off the cold weather. Plaintiff testified that he arrived at the Library with a telephone directory and newspaper, intending to read and take notes at a Library table, but that he was stopped at the Library entrance and denied access to the facility by security personnel. After being told only that he needed to "clean up," plaintiff was instructed to leave the building, which he did. At no time was plaintiff informed of the existence of the regulation in question or what specifically about his appearance was deemed to be prohibited.

After seeking advice and direction from the Mayor's office regarding the incident, plaintiff filed a formal complaint on March 23, 1993 with the D.C. Department of Hu-

---

1. Plaintiff did not pursue this argument in his summary judgment motion.

2. The 1984 regulation reads in pertinent part:
 II. MINOR OFFENSES
 Minor offenses are to be dealt with at the unit level first, using the following guidelines to determine the type and extent of action to be taken:
 A. Conduct or personal condition objectionable to other persons using the Library's facilities or which interfere with the orderly provision of library services.
 . . .
 3. Objectionable appearance (barefooted, bare-chested, body odor, filthy clothing, etc.)
 . . .
 ACTION

 a. Martin Luther King Memorial Library department or division staff shall warn the person.
 b. If this fails, the Martin Luther King Memorial Library staff shall call the Library security Office at once to ask the person to leave the building. . . .
 c. . . . If the patron fails to comply, the Metropolitan Police are to be called at once by the Librarian in charge, then the Library Police Office notified without delay. A written report should follow.
 Guidelines for Handling Security Matters ("Guidelines"), Section II (Dec. 7, 1984).

man Rights and Minority Business Development. In his complaint, plaintiff alleged that the Martin Luther King Memorial Library had unlawfully discriminated against him on the basis of appearance, in violation of the DCHRA. Plaintiff withdrew his initial administrative complaint prior to final review by the Human Rights Commission and filed this case.

## II. DISCUSSION

The Court will first determine who the appropriate defendants are in this suit, and then address plaintiff's claims under the DCHRA, the Constitution, and § 1983.

### A. The Library

■ Defendants first contend that the Library is not an appropriate party to be sued in view of long-standing precedent that holds that "bodies within the District of Columbia government are not suable as separate entities." *Braxton v. National Capital Housing Auth.,* 396 A.2d 215, 216 (D.C.1978). Although the Board of Library Trustees is an "independent agency" under D.C.Code Ann. § 1–603.1(13), unlike the Board of Trustees of the University of the District of Columbia, another independent agency, the Board of Library Trustees has not been granted the authority to sue or defend suits. "Capacity to sue and be sued is governed by state law." *Bridges v. Kelly,* 977 F.Supp. 503, 506 n. 4 (D.D.C.1997) (citing Fed.R.Civ.P. 17(b)). *Compare* D.C.Code § 31–1511 (granting the Board of Trustees of the University of the District of Columbia the authority to "sue and be sued") *with* D.C.Code Ann. § 37–105 (setting forth the duties of the Board of Library Trustees with no mention of litigating authority). Accordingly,

all claims against the District of Columbia Public Library are hereby **DISMISSED.**

### B. Individual Defendants

■ Plaintiff has also named as defendants the Director of the Library and eight individual members of the Library's Board of Trustees in their official and individual capacities, as well as three unnamed Library employees. Defendants assert qualified immunity for these defendants in their individual capacities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow,* a government official may be liable for actions taken "which violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727.

■ Plaintiff alleges that the vagueness and overbreath problems of the regulation were brought to the attention of the Director and Trustees subsequent to its enaction, that the Board of Trustees discussed requests to revise the appearance regulation, and that the Board in fact revised the regulation twice since its first drafting. As the Supreme Court recently held in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), however, even evidence of improper motive is irrelevant to a claim of qualified immunity. *Id.* 118 S.Ct. at 1591. Under *Harlow,* as clarified by *Crawford–El,* the issue is not the individual defendant's motive in taking certain action, but rather, whether a reasonable person would have known that maintaining the appearance regulation violated a clearly established constitutional right.[3]

---

**3.** During his deposition, Dr. Franklin, Director of the D.C. Public Library, testified that he had submitted a copy of the regulation to the Office of Corporation Counsel for its review but did not receive comments. *See* Pl's

Ex. 4, Franklin Dep. at 60 (stating that corporation counsel reviewed either the 1979 or the 1982 version of the regulation).

Review of the 1979, 1982, and 1984 versions of the "Objectionable appearance"

Although plaintiff argues that the right to receive information has been established since at least 1943, *see Martin v. City of Struthers*, 319 U.S. 141, 146–47, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the right at issue in this case is narrower, and focuses rather on the type of regulation that may properly be maintained in controlling access to a limited public forum, such as a public library. Here, the Court cannot conclude that a reasonable person would have known that the regulation at issue violated a clearly established constitutional right. "The contours of the right must be sufficiently clear that a reasonable [person] would understand that what he is doing violates that right.... [I]n light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, the Court concludes that summary judgment should be granted in favor of the Director and Trustees of the Library, as well as the three unnamed Library employees, on the basis of qualified immunity. Accordingly, all claims asserted against those defendants in their individual capacities are **DISMISSED WITH PREJUDICE**.

The Court will next address the issue of whether plaintiff's private cause of action under the DCHRA should be dismissed for failure to exhaust administrative requirements.

## C. Plaintiff's Private Cause of Action under the D.C. Human Rights Act

The DCHRA prohibits discrimination based on "personal appearance." D.C.Code Ann. § 1–2501. This term is defined as "the outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including, but not limited to, hair style and beards." D.C.Code Ann. § 1–2502(22). Only a specific series of exceptions exist permitting appearance-based regulations where they relate to

the requirement of cleanliness, uniforms, or prescribed standards, when uniformly applied for admittance to a public accommodation, ...; or when such bodily conditions or characteristics, style or manner of dress or personal grooming presents a danger to the health, welfare or safety of any individual.

D.C.Code Ann. § 1–2502(22).

Defendants contend that plaintiff may not prosecute his DCHRA claims because D.C.Code § 1–2543 provides exclusive administrative procedures for DCHRA complaints filed against the District government.[4]

In response to defendants, plaintiff advances two arguments. First, plaintiff contends that the Court resolved this issue

guideline at issue here reveals that the language of this guideline has remained intact. The uncontroverted fact is that either the 1979 or 1982 version of this guideline was reviewed by Corporation counsel's office. While this may not rise to the level of obtaining a legal opinion, and while case law holds that the defendant's subjective knowledge is irrelevant because *Harlow* is an objective test that looks at a reasonable person, the Court is of the opinion that the fact that the Director submitted the guideline at issue here for review by the Office of Corporation Counsel rebuts plaintiff's claim of unconstitutional

motive, even if it is not relevant to the individual defendants' claim of qualified immunity.

4. Section 1–2543, entitled "Establishment of procedure for complaints filed against District government" reads as follows:

*Notwithstanding any other provision of this chapter,* the Mayor shall establish rules of procedure for the investigation, conciliation, and hearing of complaints filed against District government agencies, officials and employees alleging violations of this chapter.

D.C.Code Ann. § 1–2543 (emphasis added).

when the Court denied defendants' initial motion to dismiss the complaint. It is clear, however, that the Court's Order did not address this substantive issue. Rather, defendants' motion to dismiss was denied without prejudice by the Court to enable the parties to complete discovery prior to any further judicial consideration of this issue.

Second, plaintiff argues that the plain language of § 1–2556 of the DCHRA enables him to commence a private action either in this Court or through the District's Office of Human Rights.[5] Plaintiff also maintains that, on its face, § 1–2543 does not preclude pursuit of relief in the courts or create an exclusive remedy of administrative proceedings, but rather, that section provides for the general availability of administrative remedies.

Defendants rely heavily on *Williams v. District of Columbia*, 467 A.2d 140 (1983), in support of their argument that plaintiff may not bring this private cause of action against the District of Columbia. In *Williams*, however, the primary factor guiding the Court of Appeal's decision appears to be plaintiff's status as a D.C. government employee. *Id.* at 142. The *Williams* court held that

> the administrative remedies provided by D.C.Code § 1–2543 (1981) and its predecessors ... are the exclusive remedies available to a *District of Columbia government employee claiming discrimination in employment*, and that the pri-

vate right of action established by D.C.Code § 1–2556 (1981) and its predecessor ... is available only to non-government employees.

*Id.* at 142 (emphasis added). Additional precedent makes clear that for District *employees* alleging discrimination on the part of the District under the DCHRA, their exclusive remedy is the administrative procedures promulgated under § 1–2543.[6] *See, e.g., Deskins v. Barry,* 729 F.Supp. 1, 3 (D.D.C.1989); *Newman v. District of Columbia,* 518 A.2d 698, 701 (D.C.1986).

The issue of whether non-government employees (or private citizens) can commence a lawsuit against the District of Columbia, its agencies, officials or employees under § 1–2556, and seek relief for DCHRA violations, appears to be an issue of first impression. Defendants have not identified any authority to support their argument that § 1–2543 is the exclusive remedy for *non-government* plaintiffs suing the District of Columbia. However, plaintiff has likewise been unable to cite any precedent in which a private citizen commenced a lawsuit in a court of competent jurisdiction against the District, its agencies or officials for discrimination under § 1–2556 and seeking relief for DCHRA violations.

 In resolving a question of statutory interpretation, a court's starting point is always the language of the statute. *See*

---

5. Section 1–2556 provides in relevant part:
 Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate....
 D.C.Code Ann. § 1–2556(a).

6. The Mayor has established procedures for the resolution of complaints against the District government at 4 DCMR § 100 *et seq.* Section 101 reads as follows:

 The provisions of this chapter shall govern the processing of any matter involving discrimination on grounds of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, matriculation, physical handicap, or political affiliation in connection with any aspect of District government employment.
 4 DCMR § 101.1.

*Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 214, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984); *Henke v. United States Dep't of Commerce,* 83 F.3d 1453, 1459 (D.C.Cir.1996) ("We start with 'the fundamental canon that statutory interpretation begins with the language of the statute itself.'" (quoting *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990))); *see also Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc).

Although § 1–2556 does in fact create a private cause of action under the Act, this express right must be interpreted in conjunction with the overriding language of § 1–2543. Section 1–2543 states that "Notwithstanding any other provision of this chapter, ...," for suits brought against District government agencies, officials and employees, a private cause of action under § 1–2556 is not directly available. *See Williams,* 467 A.2d at 142 ("One of the 'other provision[s] of this chapter' which this section expressly makes inapplicable is § 1–2556 ...").

■■■ The Court concludes that the "Notwithstanding any other provision" language of § 1–2543 is clear and unambiguous and requires that any plaintiff bringing suit under the DCHRA against the District, its agencies or officials, follow the procedures promulgated by the Mayor under that section. Thus, while pursuant to § 1–2556, a plaintiff may bring an action under DCHRA in a court of competent jurisdiction against any defendant *other than* the District, its agencies or officials, a plaintiff who brings an action under the DCHRA against the District, its agencies or officials must proceed under § 1–2543. Section 1–2543 does not distinguish between D.C. government employees and other plaintiffs, but rather, § 1–2543 distinguishes between defendants, requiring plaintiffs bringing suits against the District, its agencies and officials, to follow the procedures established by the Mayor pursuant to § 1–2543.

Here, plaintiff brings a claim under the DCHRA and names the District of Columbia as defendant. Therefore, the Court concludes that plaintiff was required to follow the procedures promulgated by the Mayor under § 1–2543. In this case, plaintiff filed, but then withdrew, his formal administrative complaint with the Human Rights Commission and subsequently filed this case. Under § 1–2543 of the DCHRA, plaintiff is precluded from bringing a DCHRA claim in this Court. Accordingly, plaintiff's claim against all defendants under the DCHRA is **DISMISSED.**[7]

## D. Constitutionality of the Library's Appearance Regulation Under the First Amendment

In addressing a case with both § 1983 and constitutional claims, this circuit has

---

7. In view of the Court's ruling that plaintiff cannot maintain his private cause of action under the DCHRA, it is not necessary for the Court to reach the merits of defendants' argument that plaintiff may not proceed with his DCHRA claim because of his failure to satisfy the statutory notice requirement of D.C.Code § 12–309. Nor does the Court need to reach defendant's collateral argument that plaintiff's claim under the DCHRA is barred by the statute of limitations.

Moreover, although *Williams* held that there is no private right of action for District employees under the DCHRA, it expressly left open the issue of where a District employee could obtain judicial review of the agency's determination, whether in the District of Columbia Court of Appeals, under D.C.Code § 1–2554, or in this Court, under 42 U.S.C. § 2000e–16. *Williams,* 467 A.2d at 142, n. 4. Because the issue is not squarely before the Court, this Court does not decide whether plaintiff could have appealed an unfavorable decision of the agency to this Court.

stated that "[a]lthough [plaintiff] bases his claims on both § 1983 and the Constitution, we have previously recognized that the case law relating to § 1983 claims, and that relating to claims brought directly under the Constitution, 'have been assimilated in most . . . respects.'" *LaRouche v. Fowler*, 152 F.3d 974, 987 (D.C.Cir.1998) (quoting *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C.Cir.1996)). The circuit therefore proceeded to address both claims as one. *See id.*

In this case, because plaintiff similarly brings claims under § 1983 as well as under the First and Fifth Amendments, the Court will address both claims as one.

### 1. Whether a First Amendment Right Exists

■ "The first issue to be addressed in any challenge to the constitutional validity of a rule under the First Amendment is whether a First Amendment right exists." *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1250 (3d Cir.1992) (citing *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). It is well-established and can hardly be disputed that "the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 482–483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *see also Kreimer*, 958 F.2d at 1256 (citing *Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943)("This right, first recognized in *Martin* and refined in later [F]irst [A]mendment jurisprudence, includes the right to some level of access to a public library, the quintessential locus of the receipt of information.")).

Accordingly, in view of long-standing precedent supporting plaintiff's First Amendment right to receive information and ideas, and this right's nexus with access to public libraries, the Court must next determine the constitutional standard of review for defendants' appearance regulation and then resolve plaintiff's claims that the regulation violates the First Amendment due to its vagueness and overbreath.

### 2. Constitutional Standard of Review

■ In determining the appropriate standard under which to review plaintiff's challenge to the Library regulation, the Court must first identify the nature of the forum to which plaintiff sought access. *See Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)(adopting "forum" analysis in order to determine whether a particular rule or regulation violates the First Amendment). The parties correctly assert that a public library is a limited public forum for purposes of constitutional analysis. *See Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1250 (3d Cir.1992). Since the Government may limit access to a forum depending upon the nature of the forum, see id. at 1255, the Court must determine the extent to which access to this limited public forum may be restricted by the District of Columbia. *See Cornelius*, 473 U.S. at 797, 105 S.Ct. 3439.

The regulation at issue allows for the denial of library access based on a patron's personal appearance. Since the effect of such a regulation is to prevent certain patrons from engaging in *any* conduct within, or use of, the library, protected First Amendment activities such as reading, writing and quiet reflection are directly limited. *See Kreimer*, 958 F.2d at 1264.

■ Content-neutral regulations that limit protected First Amendment activities within a designated public forum may be

characterized as time, place and manner restrictions. *Perry Educ. Ass'n,* 460 U.S. at 45–46, 103 S.Ct. 948. Such restrictions are constitutional only if they are "narrowly tailored to serve a significant governmental interest and ... leave open ample alternative channels for communication of information." *Id.* at 45, 103 S.Ct. 948; *see also Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)(citing *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).

Plaintiff contends that the appearance regulation impinges on his First Amendment right to access the public library, its information, and resources. He also maintains that the regulation is a time, place and manner restriction which must be not only reasonable, but narrowly tailored to survive a facial challenge to its constitutionality. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948.

Defendants, on the other hand, assert that the regulation need only be reasonable because plaintiff did not intend to engage in protected First Amendment activity. *See Kreimer,* 958 F.2d at 1261–62; *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948 ("In addition to time, place and manner restrictions, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."). Defendants argue that, because the appearance regulation at issue governs personal hygiene, health and safety, and seeks to ensure that all patrons enjoy full use of the library, it is content-neutral and meets the reasonableness requirement of a regulation that reserves the forum for its intended purpose. Alternatively, defendants maintain that even if plaintiff's intended conduct is considered

protected First Amendment conduct within the limited public forum, the regulation in question constitutes a time, place and manner restriction which is narrowly tailored to achieve a significant government interest and leaves open alternative means of using library materials. *Id.* at 46, 103 S.Ct. 948.

In assessing the appropriateness of applying a reasonableness standard versus a "narrowly tailored" standard, the Court looks for guidance to the Third Circuit's decision in *Kreimer,* 958 F.2d 1242. The *Kreimer* Court faced a similar issue when it was called upon to examine two different types of library restrictions. One rule barred patrons from the library for engaging in disruptive or harassing conduct, and a second required persons whose bodily hygiene was so offensive as to constitute a nuisance, to leave the building. *Id.* at 1264.

Two distinct standards of review were applied to the two regulations at issue in *Kreimer. Id.* at 1248. A reasonableness test was used to review the constitutionality of regulations prohibiting inappropriate conduct, since harassing behavior was not an expressive activity entitled to constitutional protection within the limited public forum. *Id.* at 1262. A stricter, "narrowly tailored" standard of review, was applied in examining the library's hygiene regulation "because [the hygiene regulation] would require the expulsion of a patron who might otherwise be peacefully engaged in permissible First Amendment activities within the purposes for which the Library was opened, such as reading, writing or quiet contemplation." *Id.* at 1264.

Defendants urge the Court to use the same reasonableness standard applied to conduct regulations in *Kreimer* to the appearance regulation at issue in the present case. In drawing this analogy, defendants argue that plaintiff did not intend to en-

gage in protected First Amendment activities, and therefore, his conduct does not warrant the higher standard of constitutional review.

▉ Although defendants attempt to minimize the distinction made in *Kreimer* between treatment of conduct rules versus hygiene rules, the instant case clearly raises questions concerning the constitutionality of a *hygiene* rule, not a conduct rule. Moreover, defendants concede that plaintiff's need to "clean up," and not his anticipated use of the library, triggered enforcement of the appearance regulation. Thus, under the unique circumstances of this case, plaintiff's intended use of the Library is irrelevant since the appearance regulation, and its enforcement here, prevented him from engaging in *any* conduct or activity within the Library. To be sure, First Amendment protections extend to access to information and ideas, *see Stanley,* 394 U.S. at 564, 89 S.Ct. 1243; *Griswold,* 381 U.S. at 482–483, 85 S.Ct. 1678; *Kreimer,* 958 F.2d at 1256. Accordingly, because plaintiff's access to the Library was restricted based upon his appearance, the appropriate standard to apply in this case is the stricter, "narrowly tailored" standard of review. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948.

### 3. The Appearance Regulation Is Vague and Overbroad.

Specific constitutional standards apply when the language of government regulations is challenged for vagueness. In *Fire Fighters Ass'n, D.C. v. Barry,* this court observed that, "[w]hen a regulation lacks terms which can be defined objectively, a court will strike it down for vagueness." 742 F.Supp. 1182, 1196 (D.D.C.1990)(citing *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)). And where, as here, civil regulations directly impinge on protected First Amendment rights, "a more stringent vagueness test should apply." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Keeffe v. Library of Congress,* 777 F.2d 1573 (D.C.Cir.1985).

Pursuant to the challenged regulation in this case, a patron can be denied access to the Library if his or her appearance is "objectionable (barefooted, bare-chested, body odor, filthy clothing, etc.)" or if his or her appearance "interferes with the orderly provision of library services." Guidelines, II.a.3. Plaintiff argues this appearance regulation is both vague and overbroad.

In *Kreimer v. Bureau of Police for the Town of Morristown, supra* at 1242, a homeless man was asked to leave a New Jersey public library pursuant to library rules that required patrons to be engaged in library activities, prohibited patrons from annoying other patrons, and prohibited access to patrons whose bodily hygiene was so offensive as to constitute a nuisance. *Id.* at 1268. After considering Kremier's facial challenge to the constitutionality of these rules, the Third Circuit reversed the district court finding and upheld all the regulations at issue, including the library's hygiene regulation, which the circuit found to be narrowly tailored. In its analysis, the circuit noted that this particular hygiene regulation was governed by an objective "nuisance" test—a test which New Jersey case law specifically defined as "unduly [interfering] with the exercise of the common right." *Id.*(citing *Mayor & Council of Borough of Alpine v. Brewster,* 7 N.J. 42, 80 A.2d 297, 300 (1951)).

▉ In comparison, the term "objectionable appearance" which guides enforcement of the regulation at issue here has neither a legal standard, nor a specific definition. Rather than incorporating an objective test into its regulatory language,

such as the "nuisance" standard utilized in *Kreimer*, the D.C. Library's appearance regulation depends only upon subjective interpretation of the term "objectionable", a characteristic which clearly distinguishes it from the regulation upheld as narrowly tailored in *Kreimer*.

Indeed, discovery in this case revealed the inherent imprecision of the barring regulation and the potential for unlimited ad hoc determinations of the regulation's scope by Library guards, employees, supervisors, and outside police officers. For instance, Mr. Frederick Williams, the chief of security at the Library, testified in his deposition that Library guards often have difficulty determining when a person should be barred from entering the Library under the regulation. Pl.'s Ex. 5, Williams Dep. at 55–56. He also stated that no training and no written materials are available to the guards or other personnel to instruct them how to apply the regulation. *Id.* at 63, 66. He stated that in applying the regulation, the guards often must contact Mr. Williams or other supervisors, only to be instructed to apply the appearance provision based not simply on its plain language, but in accordance with the way Mr. Williams personally intends that the regulation to be applied. *Id.* at 57. Mr. Williams testified that he tries to explain to the guards the "mind set" of the drafters. *Id.* at 29–30, 55–56. However, Mr. Williams admitted in his deposition that he could not provide the guards with sufficient guidance as to how to apply the regulation in question based only on a description of a visitor's appearance over the telephone. *Id.* at 87–88. Although upon receiving a call, Mr. Williams sometimes goes to look at the patron in question, Mr. Williams testified that he could not personally respond to all of the calls he receives each month for assistance in interpreting and applying the barring regulation. *Id.* at 62–63, 87.

When asked whether he could make a decision based on a telephone or radio description of a patron's appearance, Mr. Williams stated that he would have to personally see a library visitor if he wanted to make the decision whether to bar that person from the library. *Id.* at 89. On those occasions when he cannot respond to the calls, Mr. Williams testified that the D.C. Metropolitan police, who also are not trained in interpreting or applying the barring regulation, are often called to assist the Library personnel in applying the regulation. *Id.* at 87.

Defendants claim that the regulation in question provides specific examples of "objectionable appearance", such as "filthy clothes" and "body odor". Therefore, they argue that a "commonsense" standard can be applied by Library staff and security guards, using the examples to inform their day-to-day decisions regarding the regulation's enforcement. However, unlike *Kreimer*, the "objectionable" nature of these conditions is not accompanied by any cognizable legal definition to clarify exactly what appearances, or degrees of filth and odor are meant to be prohibited. For example, whether this implicates a painter's overalls, a mechanic's shirt, a child's playclothes, or perfume or cologne is unclear. As a result, this regulation necessarily falls short of the objective standard required to survive a vagueness challenge. See *Kreimer*, 958 F.2d at 1268.

Overbreath and vagueness are often closely related in First Amendment analysis. *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("[W]e have traditionally viewed vagueness and overbreath as logically related and similar doctrines."). Here plaintiff argues that the vagueness problems which arise as a result of the Library's failure to adequately define terms such as "objectionable" and "body odor" are magnified by the

regulation's use of the word "etc." to complete its list of examples constituting prohibited appearance.

Defendants claim that "etc." can be specifically defined as "of a like kind", and argue that its meaning is not so mysterious as to warrant a finding of vagueness or overbreath. However, a potentially expansive term such as "etc.", especially when used in a context that restricts constitutionally protected behavior, could license the prohibition of any number of physical characteristics, depending upon the interpretation of various individuals providing daily enforcement.

 This Court recognizes that overbreath is not a doctrine liberally applied. Facial challenges of overbreath require "that there must be a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Similarly, a regulation is valid "so long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

 Without additional limitation, the term "etc.", and the discretion that accompanies its interpretation, create an effectively standard-less test whose daily application is governed only by subjective determination. This lack of definitive guidance places patrons' First Amendment rights in "realistic danger." *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118. It threatens to compromise access to information and ideas found within the Library's limited public forum by directly precluding, or otherwise discouraging, use of the D.C. Public Library system by persons that Library staff, in their discretion, find objectionable. Under these circumstances, application of the overbreath doctrine is appropriate since enactment and enforcement of the regulation in question can result in a total denial of library access and thus "reaches a substantial amount of Constitutionally protected conduct." *Hoffman Estates, Inc.*, 455 U.S. at 494, 102 S.Ct. 1186.

It is clear that a regulation that is subject to individual discretion in its interpretation, that contains highly generalized terms, and whose categories of restricted appearance extend beyond stated examples, through the use of "etc.", sweeps in hygiene conditions well beyond those that might "interfere with the orderly provision of library services." Guidelines, II.a. Under the present regulation, a certain appearance which individual sensitivities and prejudices may deem "objectionable" could easily be prohibited. Thus, without greater specificity in its language and increased guidance in its application, a highly subjective and discretionary regulation, such as the one promulgated by the Library, may easily lead to prohibitions above and beyond those required to promote the government's interest in assuring public health and welfare for Library patrons.

Consequently, the Court concludes that this regulation, as written, is both vague and overbroad, thus failing to satisfy First Amendment standards. Accordingly, plaintiff is entitled to summary judgment on his First Amendment challenge.

### E. The Library Appearance Regulation Violates the Due Process Clause of the Fifth Amendment.

 In addition to plaintiff's claim that the regulation in question violates the First Amendment, plaintiff also contends that the Library's appearance regulation constitutes a deprivation of procedural due

process under the Fifth Amendment. The Due Process Clause of the Fifth Amendment is applicable to the District of Columbia, *see Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and provides that the government shall not deprive a person of life, liberty or property without due process of law. U.S. Const. amend. V.

The Court must therefore consider whether plaintiff has a specific liberty or property interest affected by the D.C. Library's action here, what process was due to plaintiff, and whether he was afforded such process. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972);

Plaintiff argues that his constitutionally guaranteed First Amendment right of access to information and ideas are the liberty interest compromised in this case. Moreover, plaintiff re-asserts his claim that the appearance regulation which barred his access to the Library is both vague and overbroad in its limitation of his constitutional right to access a public library. As a result of these deficiencies, plaintiff maintains that the regulation fails to provide fair notice of what appearance may be prohibited under its application. *See United States v. Thomas,* 864 F.2d 188, 195 (D.C.Cir.1988).

The circuit in *Thomas* observed that

courts do not require that an enactment touching on First Amendment interests set forth the precise line dividing proscribed from permitted behavior, or that a person contemplating a course of behavior know with certainty whether his or her act will be found to violate the proscription. Rather … the Due Process Clause requires that the enactment be drafted with reasonable specificity sufficient to provide fair notice.

*Id.* (citing *Smith v. Goguen,* 415 U.S. at 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).

The doctrine of vagueness has its origins in the principles of due process. As explained by the Supreme Court in *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983),

[a] vagueness challenge will succeed when a party does not have actual notice of what activity the statute prohibits … the vagueness doctrine, unlike the overbreath doctrine, additionally seeks to ensure fair and non-discriminatory application of the laws, thus reflecting its roots in the due process clause.

*Id.* at 357, 103 S.Ct. 1855. Plaintiff further asserts that the appearance regulation vests undue discretion in Library staff, providing no clear or objective standard with which to interpret or enforce its provisions.

Defendants maintain that plaintiff received sufficient notification of the violation in question and of what he must do to gain entry to the Library. Defendants also dispute that the regulation vests any undue discretion in Library staff or security officials.

Plaintiff's deposition testimony is that he was stopped at the entrance of the Library, told to "clean up," and instructed to leave the building. Multiple depositions reveal that Library security guards responsible for the enforcement of the regulation on that day remember nothing about the plaintiff or his appearance; nor do they recall the incident in question. *See* Pl.'s Opp. Ex. 3, North Dep. at 8 (guard on duty on February 14, 1993 could not recall the incident); Pl.'s Opp. Ex. 4, Taylor Dep. at 10 (same); Pl.'s Opp. Ex. 5, Young Dep. at 12–13 (same). Plaintiff has maintained in his deposition that he believed himself to be presentable and that he did not know what "clean up" meant in regards to his

appearance. Pl.'s Ex. 1, Armstrong Dep. at 52. There is also no evidence that plaintiff was ever told either that an appearance regulation existed, or exactly which provision of such a regulation he had violated.

Yet, even if plaintiff had been informed by the security officers on duty that day what specifically about his appearance was "objectionable" to them, plaintiff argues that fair notice is still clearly lacking under the Library's regulatory scheme. The Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), discussed the standards for evaluating both vagueness and fair notice while discussing the potential harms of enforcing vague laws:

> Vague laws offend several important values. First ... we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.... Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Id.* at 108–109, 92 S.Ct. 2294; *see also Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186.

Similarly, this circuit has ruled that officials must have "[e]xplicit guidelines in order to avoid arbitrary and discriminatory enforcement." *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030, 1035 (D.C.Cir.1980). Such guidelines are absent in the present case. In fact, given the deposition of Mr. Williams, it is unclear how a consistent method of enforcement could be contemplated by the Library, given that the written text of the appearance regulation is less than "explicit" in describing exactly what hygiene or appearance conditions will be considered "objectionable" and therefore prohibited.[8]

Even if plaintiff successfully met the appearance standards as enforced at the Library on February 14, 1993, there is no way of predicting what standards would have been applied to him the next day, or the following week, at any Library branch. Because the regulation at issue is wholly dependent on the individual staff member's interpretation of what constitutes "objectionable ... body odor, filthy clothing, etc.," Guidelines, II.a.3, its enforcement is unavoidably arbitrary. *See Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.").

Not only does the vague appearance regulation increase the risk of discriminatory decisions regarding library access, its arbitrary nature and application prevents the type of uniform decision-making required to provide fair notice of what hygiene conditions will be prohibited. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (striking down anti-vagrancy laws granting police subjective and undue discretion in enforcement); *Kolender v. Lawson*, 461 U.S. at 360, 103 S.Ct. 1855 (same).

The appearance regulation at issue lacks both explicit guidelines and an objective legal standard. Moreover, the guideline sets out very general prohibited categories with a scope of application virtually unlim-

---

8. Excluding those categories enumerated by the Guidelines, II.a.3, "Objectionable appearance (barefooted, bare-chested, body odor, filthy clothing, etc.)," the only other standard of interpretation and/or enforcement provided for Library staff is the prohibition of personal conditions, "objectionable to other persons using the Library facilities or which interfere with the orderly provision of library services." Guidelines, II.a.

ited by the Guidelines' use of "etc.". As a result, the Court finds the Library's appearance regulation fails to provide fair notice to its patrons or to meet constitutional standards prohibiting arbitrary enforcement of government regulations. *Id.* at 169, 92 S.Ct. 839. For these reasons, the regulation at issue is also in violation of the due process clause of the Fifth Amendment.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the Library's "objectionable appearance" regulation violates the First Amendment and the Fifth Amendment's Due Process Clause, as protected by 42 U.S.C. § 1983, because the provision is neither narrowly tailored nor a reasonable time, place, and manner restriction serving a significant government interest. The amorphous appearance regulation impermissibly vests unfettered and subjective enforcement discretion in whomever the regulation enforcer happens to be at a given hour or day. The regulation is imprecise and provides no articulable standard to guide either government officials or employees who must enforce the regulation, or the public who must conform its conduct to the barring regulation's vague requirements. Because the regulation denies access to a public library that is at the core of our First Amendment values and is unconstitutionally vague and overbroad under settled First and Fifth Amendment principles, the regulation's application must be enjoined.

Accordingly, it is hereby

**ORDERED** that the defendant is enjoined from enforcing the undefined terms of the "Objectionable Appearance" section of the District of Columbia Public Library Guidelines for Handling Security Matters, specifically, the terms "body odor, filthy clothing, etc."; and it is further

**ORDERED** that plaintiff's motion for partial summary judgment as to plaintiff's First Amendment, Fifth Amendment due process claims, and Civil Rights Act, 42 U.S.C. § 1983, claim is **GRANTED** against the District of Columbia, Dr. Hardy Franklin, Director, District of Columbia Public Library, and the following Library trustees, in their official capacities: Antonell Aikens, Joyce Clements–Smith, Nora Gregory, Marguerite Kelly, Elda Maria Phillips, Chris Prouty Rosenfeld, Donald Smith, and Sloan E. Williams; and it is further

**ORDERED** that all claims against the District of Columbia Public Library are **DISMISSED WITHOUT PREJUDICE** to any other claims; and it is further

**ORDERED** that summary judgment is **GRANTED** in favor of Hardy R. Franklin, Director, District of Columbia Public Library, in favor of the eight individual members of the Library Board of Trustees: Antonell Aikens, Joyce Clements–Smith, Nora Gregory, Marguerite Kelly, Elda Maria Phillips, Chris Prouty Rosenfeld, Donald Smith, and Sloan E. Williams; and in favor of the three unnamed Library employees. All claims against these defendants in their individual capacities are hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that plaintiff shall submit supplemental memoranda on the issue of damages, and recommendations for further proceedings, by no later than **October 1, 2001**; defendant's response shall be filed no later than **November 1, 2001**; plaintiff's reply shall be filed by **November 15, 2001**.